## J. M. MOORE *v.* STATE.

### [65 South. 126.]

1. CRIMINAL LAW. *Forgery. Elements. Instruments subject to forgery. Report of public schools. Code 1906, sections 4522-4556-4557-4560.*

In order that forgery may be committed, the writing alleged to have been forged must be one which, if genuine, might injure another.

2. FORGERY. *Instruments subject to forgery. Report of public school. Code 1906, sections 4497-4522-4556-4557-4560.*

Under Code 1906, sections 4497-4522-4556-4557-4560, so providing the only person entitled to receive a certificate for the payment of salary due for teaching school in a school district from the county superintendent of education, are such as have been elected teachers by the trustees of the district or appointed by the superintendent, and a false report of a public school purporting to be signed by one who had neither been elected by the trustees nor appointed, nor contracted with by the superintendent as a teacher of the school, did not authorize the superintendent to issue a pay warrant thereon, and hence though false in fact, and though the superintendent issued a certificate for the payment of salary thereon, it could not be the subject of forgery.

APPEAL from the circuit court of Sunflower county.

HON. MONROE McCLURG, Judge.

J. M. Moore was convicted of uttering a forged instrument and appeals.

Appellant was indicted for uttering a forged instrument, the language of the indictment being that the defendant "did unlawfully, fraudulently, and feloniously utter and publish as true to one C. T. Bookout, the said C. T. Bookout being then and there the county superintendent of public education of said Sunflower county in said state, a false, forged, and counterfeit instrument; the said instrument in writing being then and there what is commonly known as a report of public school in said county of the tenor and purport and full effect, to wit." The report is set out in full, and is purported to be signed by "Lula A. Moore, Assistant Teacher," and approved by the trustees of said school. Upon receipt of this certificate, the county superintendent issued a pay certificate to appellant, the father of Lula A. Moore, who obtained thereon the sum of twenty-five dollars. It afterwards appeared that said Lula A. Moore had not taught the school in question the length of time set out in said report, and in fact she was not a regularly elected teacher of said school at all. Appellant was convicted and sentenced to the penitentiary for ten years, and appeals.

*D. M. Quinn,* for appellant.

Counsel for the state quotes isolated statements from the testimony of the alleged trustees, wherein they undertook to show that they were elected as trustees, but the record of their testimony on cross-examination will show that they were not duly elected, qualified and acting trustees as alleged in the indictment, and as required by the school laws of the state of Mississippi, and the testimony of the county superintendent shows that he had no record of the reports of the elections, that he made no appointments of trustees, and therefore, there were no

duly qualified and acting trustees, as alleged in the indictment and as required by the laws of the state, and as held to be essential in the case of *Griffin* v. *State,* 96 Miss. 309, and the testimony of Bookout, county superintendent, further shows that he kept no record as required by law, and that the only record he had of the trustees was the fact that names of certain parties were signed to the monthly school reports when they were presented to him for certificate of payment. In this case the report presented could have had no legal efficacy and was not capable of deceiving even the most credulous, was not such an instrument as could have sustained a charge of forgery for its making, and if the charge of forgery could not have been sustained for the making of a report, it was not such an instrument as is covered by the statute for uttering forgery. Even had the defendant known that the report was false, and there is nothing in the testimony to show that he had such information, but, on the contrary, the testimony shows that he received, through the mail as usual, and thought it a genuine and valid report, still with the information in the hands and at the command of the county superintendent of education, it was not such a report as could have deceived the county superintendent and have defrauded the county, and this would have been true even though the county superintendent had been a weak-minded man, as indicated in the *Smith case,* wherein it is said that the statute against forgery is intended to protect the simple minded.

The testimony further shows that the alleged trustees gave a contract to Lula A. Moore to teach the school. The superintendent's testimony shows that he did not have a contract for Lula A. Moore to teach the school and that he did not appoint Lula A. Moore to teach the school, as he was authorized under the statute to do. Then I submit that it was impossible for him to have been deceived by the report, and the instrument not being such as was capable of deceiving the superintendent and

not being an instrument of any legal efficacy, it could not sustain the charge of uttering and publishing a false report.

The county superintendent further testifies that he thought the writing on the report was of Lula A. Moore, the wife of the defendant, and that it looked like her writing. This should have put him on his guard and should have been a protection to the county, had he taken advantage of the information which it disclosed, and should have put him on his inquiry because he knew that he had no report of her election as teacher and had no appointment of her as he was authorized to do. If the superintendent was not deceived by this report and thought the writing that of the appellant's wife, why should the state be allowed to presume that the appellant knew that the instrument was a forgery, when it was received by him through the mails from a distance of about fifty miles from where the appellant was at work, and his testimony shows that it was the custom of the members of his family to mail their reports to him and that he had no reason to suspect that his wife had not taught the month of school.

When the testimony was closed on the part of the state, the appellant moved to exclude the state's testimony, and when the whole testimony was closed, the appellant asked for a peremptory instruction. The trial judge stated that if the theory of the defense were correct, and in substance, that if it were necessary for the state to show duly elected, qualified and acting trustees, or trustees appointed by the county superintendent, or if it were necessary to show that Lula A. Moore had been elected to teach the school, or appointed by the superintendent to teach the school that the appellant's motion should have been sustained and the peremptory instruction given. How the trial court could harmonize his views with the statute law of the state, counsel for appellant is unable to conceive, and how the trial court could harmonize his

views with the holdings of the supreme court in the *Griffin case, supra,* had he permitted counsel for appellant to present the *Griffin case,* is inconceivable to counsel for appellant.

Counsel for the state cites only one case in support of his contention, to wit: That of *Burgess* v. *State,* 81 Miss. 481, and with the principles there announced, I have no quarrel; in other words, I readily concede that the crime of forgery and crime of uttering forged instruments are distinct offenses under the statute law of the state of Mississippi, but, as indicated above and in my original brief, in order for one to be guilty of uttering a forged instrument, it must be shown to have been forged, must be shown to have been known to the accused to have been a forged instrument, and must have embodied all of the elements of forgery and must have been an instrument capable of deceiving, or, in other words, an instrument of some apparent legal efficacy. If the instrument presented had no legal efficacy, and was not capable of working injury, the courts hold that the party, to whom it was presented cannot shut his eyes to the information which he has at hand, "believe it a naked lie" and then complain.

Counsel cites the *Burgess case* and in reference thereto, I will say that, in the case at bar, the court should have sustained the demurrer, and not having sustained the demurrer, should have sustained the motion to exclude the state's testimony, and should have granted the peremptory instruction, and not have permitted the state to go to the lengths that it did in obtaining the appellant's conviction. As stated in the *Burgess case* on page 485 of 81 Miss. Report: "The fair way is the safe way, and the safe way is the best way in every criminal prosecution. The history of criminal jurisprudence and practice demonstrates generally that, if every one prosecuted for crime were fairly and fully conceded all to which he is entitled, and if all doubtful advantages to the state were

declined, and if adventurous forays into dangerous and unknown fields were shunned, and if beaten paths were heedfully followed, there would be secured as many convictions of the guilty and such convictions would be succeeded by few or no reversals.'' This was a re-affirmance of a doctrine previously announced by the supreme court of Mississippi. In the case at bar if it had not been necessary for the state to show duly elected, qualified and acting trustees, those allegations would not have been made in the indictment, and having been made, it was necessary for them to have been proven. If these allegations had not been necessary and the proof of same competent, the state would not have undertaken to show that the alleged trustees were the acting trustees of the school. In other words, in order for the superintendent and the county of Sunflower to have been cheated and defrauded, it was necessary for appellant to utter an instrument which in its face, purported to have some legal efficacy, but under the testimony of the superintendent of education, in the case at bar, it is shown that it absolutely had none. It was likewise necessary to allege and prove that Lula A. Moore, the teacher whose name appeared on the instrument alleged to have been fraudulently uttered, being forged, was in fact the duly elected and qualified teacher of the school; otherwise, the instrument alleged to have been uttered could not have been capable of working an injury and could not have been capable of deceiving the county superintendent, and could not have been capable of defrauding the county; whereas, the indictment in the case at bar shows that Lula A. Moore was not the teacher, and the proof shows that the county superintendent knew that she was not the teacher.

Counsel argues that the case of *Griffin* v. *State,* 96 Miss. 309, has no application to the case at bar because the *Griffin case* was based on the crime of forgery, whereas, the case at bar is one for uttering forgery. The *Griffin case,* in referring to section 4563 of the code of 1906, says that

it requires the teacher, at the end of every scholastic month, to make out, from his register, a report, etc., and in referring to the certificate of the trustees, further states such certificate must purport to approve a report in fact made, or purporting to have been made, by a teacher of a public school, etc. Whereas, the indictment in this case shows that Lula A. Moore was not the teacher of the school, for which a report purported to have been made; that she was not in the sense of the *Griffin case* "the teacher of the school" charged with the duty of making such report, because the indictment shows that she was not the teacher of the school. The testimony of the alleged trustees shows that she had been given no authority to teach the school, and the testimony of the superintendent shows that he had not appointed her to teach the school; she was therefore not the teacher of the school and was known to the superintendent, at the time that he issued the pay certificate, not to be the teacher of the school, and the superintendent of education and the county were not cheated and defrauded by the uttering of the instrument, but simply by the inefficiency of the county superintendent, or his lack of attention to duty, and his failure to comply with the plain statute law of the state. It seems to me that the indictment in this case is fatally defective wherein it alleges that Lula A. Moore was not the teacher of the school for the reason that if she was not the teacher of the school, it was the duty of the superintendent not to issue to her pay certificates, and he was the representative of the county and charged with the knowledge that she was not the teacher. As stated in the *Griffin case,* "moreover the persons whose names are forged to such a certificate must be trustees of the public school, and this fact must be alleged and proved. The mere recital of such a fact in the certificate is not sufficient." That was not done in the case at bar, the proof on the contrary showing that the parties whose names were signed to the report were

not the trustees. It is equally as important that the name of the teacher, appearing on the report, must be the teacher of the particular public school, and this fact must be alleged and proved in order to give the report any legal efficacy or make it apparently the duty of the superintendent to issue the pay certificate on its presentation. I am not surprised that the assistant attorney-general dismissed the *Griffin case* with one short sentence, and that he was so limited in his contention that the *Griffin case* does not apply in the case at bar. Had he seriously contended that the *Griffin case* did not apply, his position would have been similar to that of the Roman Augurs, who on account of the knowledge that their pretentions were absurd, and that each Augur knew that the pretentions of each other Augur were absurd, could scarcely look into each other's faces, even while pretending to interpret the will of the gods, without laughter, I apprehend that the supreme court will convince the assistant attorney-general in this case that it is not quite as credulous as the Roman Populace.

Counsel for the state contends that the *Mortimer case,* 82 Miss. 443, is not applicable to the case at bar, for the reason that he says "the presumption was deduced from the indictment that the money was paid for services actually rendered." There is no more reason for such deduction in the *Mortimer case* than there is in the case at bar, and the demurrer makes the point that the indictment should negative the fact that money was actually due to Lula A. Moore for teaching the fifth month of the Goff Public School. Counsel says "the essential element of uttering a false instrument is the misrepresentation." This may be one of the essential elements, but it is certainly not the only, and possibly not the most essential element of the crime of uttering a false and forged instrument. The falsity and forgery must be alleged and proved, and the instrument itself must have legal efficacy.

*George H. Etheridge,* assistant attorney-general, and *E. H. Green,* associate counsel, for the state.

This indictment is predicated on section 1192 of the Code of 1906, which is as follows: Uttering false instrument, counterfeit coin, etc. Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered or counterfeited instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is hereinbefore declared to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery.''

It was held in the case of *Burges* v. *State,* 81 Miss. 482, 33 So. 499, that forgery and uttering a forged or counterfeit instrument were two distinct and separate offenses, therefore the case of *Griffin* v. *State,* 96 Miss. 309, cited by counsel for appellant would have no application to the case at bar, because that case was based entirely upon the crime of forgery. In the *Mortimer case,* 82 Miss. 443, the presumption was deduced from the indictment that the money was paid for services actually rendered. No such presumption can be drawn from the indictment in the case at bar, however, for the indictment specifically alleged that appellant uttered and published as true a counterfeit instrument. This indictment contains every element of the crime charged against appellant. It is set out in the indictment that the instrument was uttered and published as true to C. T. Bookout, county superintendent of education of Sunflower county. That this instrument was false and was known as a report of the public school of said county. The essential element of uttering a false instrument is the misrepresentation and this is fully set out in the indictment. A copy of the false instrument was set out and made a part of the indictment, so the defendant cannot claim that his case was, in any manner, prejudiced by his not having notice of the crime charged against him.

There is no merit whatever to the contention of appellant that the court improperly admitted evidence that was prejudicial to his case. Counsel contends that the testimony in regard to case was erroneously admitted, because the evidence does not show that the report was a true copy of the instrument copied in the indictment. This would not be a fatal variance, because the trustees certainly knew whether they signed a report for the fifth month of the year 1910-1911, as set out in the indictment.

The instructions, given for the defendant, covered every possible legal phase of the case. The jury was instructed fully as to the doctrine of reasonable doubt and as to their duty to find the defendant not guilty if he was not proven guilty beyond a reasonable doubt. Instruction number two refused for defendant, was properly refused because the appellant was charged with uttering a forged report of the school and the section of the Code in regard to separate school districts had no bearing in the case whatever. In reference to the third refused instruction, even if the trustees of the Goff School had neglected their duty in making reports, this fact does not excuse the defendant. In regard to the fourth, fifth, sixth and seventh refused instructions, I respectfully submit that the doctrine of reasonable doubt, which these instructions are based on, was clearly stated in the ninth and tenth instructions given for the defendant.

The two instructions, given for the state could, under no constructions of the law, be held to be erroneous. The first instruction simply states that if the jury believed from the evidence, beyond a reasonable doubt, that the defendant uttered and published, as true, a school report of the Goff School, knowing the same to be false and counterfeit, that it was their duty to find the defendant guilty. The second instruction, in substantially the same form, is given in nearly every criminal case for the state

on the proposition of reasonable doubt, and tells the jury that the doubt must be reasonable and must arise out of the evidence or want of evidence.

There can be no doubt of the guilt of this appellant upon a reading of the record. The fact that he was a man advanced in years can have no possible bearing upon the decision of this case. The sentence of the court in this case cannot be said to be a life sentence in the penitentiary, because a life sentence closes the door to all hope of liberty, except through executive clemency.

SMITH, C. J., delivered the opinion of the court.

In order that forgery may be committed, the writing alleged to have been forged must be one which, if genuine, might injure another. In the case at bar, if the report alleged to have been forged had in fact been made by Lula A. Moore and certified to by the trustees of the school, that is, if it had been in fact executed by the persons whose names are signed to it, and therefore a genuine writing, it would have conferred no power on the county officials to pay any one any money as compensation for having taught the school.

The only persons entitled to receive from the county superintendent of education a certificate for the payment of salary due for teaching a school, not in a separate school district, are such as have been elected teachers of the school by the trustees thereof, or appointed as such by the superintendent himself, and with whom he has contracted for the teaching of the school (sections 4497, 4522, 4556, 4557, and 4560 of the Code) and in the case at bar it is admitted that Lula A. Moore had not been elected by the trustees, or appointed or contracted with by the superintendent, as teacher of the school in question.

That a pay certificate was in fact issued by the superintendent when the report was presented to him is immaterial on this issue, for the reason that, had the report been

genuine, that is, in fact signed by the persons whose names are attached thereto, as hereinbefore pointed out, it would not have, even apparently, conferred upon the superintendent any authority to issue such a certificate.

Since no forgery was committed, appellant is not guilty of having uttered a forged instrument. The court should have granted the peremptory instruction requested by appellant, and there should have been a verdict and judgment accordingly. The judgment of the court below will be, therefore, reversed, and appellant discharged.

*Reversed.*