THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENJAMIN LAW, Appellant.

Fourth Department, May 30, 1975

*Peter L. Yellin (Edward J. Nowak* of counsel), for appellant.

*Jack B. Lazarus, District Attorney (Edward J. Spires* of counsel), for respondent.

MARSH, P. J. Defendant appeals from a judgment entered upon a jury verdict convicting him of two counts of sale of a controlled substance, third degree. He raises seven points for consideration upon appeal which will be treated separately following a synopsis of the testimony relevant to the appeal.

On the People's direct case John W. Herritage, Investigator with the New York State Police, testified that he was assigned to the Rochester office with the Drug Enforcement Administration's Narcotics Task Force, commencing in August, 1973. On October 23, 1973 he met with other members of the Drug Enforcement Administration in order to plan the purchase of heroin with the assistance of an informer. He proceeded to the area of North Street and Hudson Avenue in the City of Rochester where all of the alleged transactions took place, driving a 1970 Cadillac accompanied by a female informant named Pat Adams. Herritage and the informant arrived at their destination at approximately 5:53 P.M. and parked the Cadillac near the exit to Bushes' Grille. The informant got out, walked around Hudson Avenue to North Street, and returned about five minutes later, when she requested Herritage to follow her to Scatters' Record Shop. Herritage got out of the car and proceeded to follow Pat Adams to that shop. Herritage observed defendant standing in the doorway of the shop. Pat told defendant that Herritage wanted to cop a bundle of heroin, which Herritage understood to mean 24 glassine envelopes of heroin. Defendant said that he had a bundle of heroin and directed Herritage to a doorway of a vacant building on the north side of the record shop, also fronting on North Street. Pat went with Herritage and defendant. When they arrived in the doorway defendant told Herritage that it would cost $130 and Herritage handed defendant $130, whereupon defendant handed Herritage two "halves". Defendant counted the money and put it in his pocket. Herritage described defendant as wearing a waist-length brown leather jacket, light brown checkered trousers, yellow shirt, and having his hair up in braids.

Investigator Herritage testified to a further buy from defendant on October 26, 1973. At 2:40 P.M. on October 26, Herritage and Pat Adams went again to Scatters' Record Shop, parked on Weld Street, and Pat and Herritage proceeded into Scatters' and found defendant and two other unidentified clerks there. Herritage called defendant to the back of the record shop and complained to him that the last bundle was short two glassine bags. Defendant explained that

he was not trying to beat Herritage out of anything and would talk to his man and that Herritage could pick up the two bags later. Defendant then informed Herritage that he had a bundle on him and if Herritage wanted it, it would cost $135. Herritage said "all right" and handed defendant $135 and obtained the two halves from defendant, or 24 glassine envelopes. Herritage suggested to defendant that they count the two halves so as to make sure that they had 24 glassine envelopes. Defendant then put one half on the counter and Herritage put the other half down and both counted their respective halves to assure that they totaled 24.

On cross-examination Herritage stated that Pat knew defendant but that he had never seen defendant prior to the buy of October 23, 1973. Pat had introduced Herritage to defendant by saying, "B.J. this Jay". On the October 23 buy, Herritage had spent about 30 seconds in the doorway of Scatters' with defendant and about two minutes in the doorway of the vacant building north of Scatters'. Pat Adams, the informant, had been present during the talk at Scatters' on the 23d and also while the buy took place in the doorway of the vacant building.

James A. Hughes, City of Rochester Police Department Narcotics Investigator, was part of Investigator Herritage's back-up team during the buys of October 23 and 26, 1973. Hughes went to the Scatters' Record Shop locale at about 5:50 P.M. on October 23, parking on North Street. Hughes saw defendant, Herritage and Pat Adams in the doorway of the vacant building about 100 feet from his position. Pat was leaning against the building, Herritage had his back to the street, and defendant was facing the street. He noticed Herritage reach toward defendant and defendant reach toward Herritage. They talked a bit, then Herritage and Pat left. Hughes recognized defendant, having seen him a couple of times previously standing in the door of Scatters' Record Shop. During the course of the October 26 buy, Herritage and Pat remained in Scatters' Record Shop for about five minutes.

William P. Marks, Rochester Police Department, also a part of the back-up team during the buys of October 23 and 26, passed by in front of Scatters' Record Shop on October 23 about 10 feet from defendant, Herritage and Pat Adams.

Ronald G. Martin, New York State Police and Group Supervisor of the Drug Enforcement Administration's Narcotics Task Force for the area, testified that he hired Pat Adams as

an informer, paying her approximately $50 per buy made through her assistance. He first recruited her when she was confined to the Monroe County Detention Facility for Females on a petit larceny charge. He spoke with the Town Justice about having Pat Adams' bail reduced in return for her cooperation with respect to introductions to heroin dealers. He worked with Pat commencing on October 12, 1973. Pat stayed at a hotel from November 10, 1973 to December 6, 1973 because she indicated to Supervisor Martin that threats had been made on her life and her apartment had been broken into. The hotel bill was paid by the Drug Enforcement Administration. Martin last saw Pat on December 6, 1973 at the Rochester Airport. She was headed for Orlando, Florida with an airlines ticket purchased by the Drug Enforcement Administration, and Martin has not heard from her since such time, nor has he tried to contact her. No arrangement was then made by Martin to contact her were she needed at a later date. Defendant was arrested on January 30, 1974 by Deputies Marks and Berardi.

Following the conclusion of the People's case, defense counsel moved for the production of the informant Patricia Adams and the court asked the People for sworn testimony with respect to steps taken to find Pat Adams. Supervisor Martin resumed the stand to testify concerning his efforts to locate her. He had called the Sanford, Florida, Police Department and spoke to one Tom Brokowsky, requesting him to check police records on her; and he checked the phone company listings and sent a man to 83 Chili Avenue, her last known address in Rochester, to search for clues as to her forwarding address. The first efforts made to locate her came at the request of the court at the close of the People's case. Pat had told Martin that she was going to Sanford, located 16 to 18 miles from Orlando, Florida. Her decision to go to Sanford, Florida, arose out of fear for her life, were she to stay around the Rochester area subsequent to her undercover activities.

Defendant was the only witness produced by the defense. He testified that he was 24 years old, had lived in Rochester for four years, and had worked at Scatters' Record Shop the last part of October, 1973 as a clerk, purchasing records and food stuffs for the combination record shop and restaurant. Defendant had no specific recollection of the events of October 23 and 26, 1973. Defendant knew Pat Adams and had seen her around but did not have a close relationship with her. He had

never sold heroin to Pat or Herritage and never saw Investigator Herritage before his appearance in court. He stated that he never possessed heroin. He might have seen Pat in the latter part of October, 1973, but not Herritage. It was a usual practice of his to stand in the doorway of Scatters'. He never saw anyone selling dope at Scatters' and if he had, he would have asked them to leave. Defendant was at Scatters' on October 23, 1973 and October 26, 1973, working from 8:00 A.M. to early morning on the 23d, and could have been in the record shop at 6:00 P.M. Defendant is 5 feet 9 inches, weighs 267 pounds and wears his hair braided. On cross-examination defendant denied that he possessed 24 bags of heroin at 361 North Street on December 5, 1973 and that he assaulted Officers Prince and Christopher when they arrested him for selling drugs on that date, although he conceded that he remembered the incident. He also conceded that his nickname is "B.J.".

When the proof closed the court continued to reserve on defense counsel's motion to produce Pat Adams as a witness.

Defendant's first point deals with the failure of the court to grant his motion for the production of the informant Pat Adams. His argument is based on the recent Court of Appeals case of *People v Goggins* (34 NY2d 163) and *People v Gower* (45 AD2d 188) and certain Federal Circuit Court of Appeals decisions. The *Goggins* case, which found elaboration in the opinion of Justice MOULE in this court in *People v Gower (supra)*, was decided on May 15, 1974, over a month prior to the commencement of defendant Law's trial. The majority opinion of Judge WACHTLER establishes the necessity of an adversary hearing as opposed to an ex parte *in camera* hearing, when the court disposes of a motion for the disclosure of an informant. Such a hearing is required when the motion seeks disclosure of the informant or information which such informant may provide concerning the guilt or innocence of defendant. The question most usually occurs as it did in *Goggins* and in the instant case where the informant introduces an undercover agent to a drug seller. A strong case for disclosure is made out where it appears that the informant either witnessed or participated in the drug buy *(Roviaro v United States,* 353 US 53). The court in *Goggins,* however, cautions against overemphasizing the role of the informer, asserting that in the last analysis (p 170): "the truly crucial factor in every case is the relevance of the informer's testi-

mony to the guilt or innocence of the accused. * * * It is impossible to predict every setting which would call for disclosure of the informer's identity. It is anticipated however that in the usual case either the course and quality of the prosecutor's proof may suggest the need for disclosure or the defendant, rather than showing weaknesses in the prosecutor's case, might become entitled to disclosure by the development of his own defense."

In *Goggins* the Court of Appeals required the disclosure of the informant's name, evaluating the testimony as presenting a close question upon the identity of the defendant as the drug seller. There was a colorable factual question whether in good faith the undercover agent misidentified the defendant Goggins, thus requiring the disclosure of the informant to throw further light upon the identity issue. The *Goggins* defendant also had an alibi, thus presenting a plausible defense in addition to the identification question.

Defense counsel in the instant appeal points to no weakness in the prosecution's case. The identification of defendant Law is certain and all but overwhelming. He was known and recognized by the officers of the back-up team prior to the drug buys in question. He was an employee of Scatters', nearly impossible to confuse with somebody else, being 5 feet 9 inches, 267 pounds, with braided hair. His own testimony placed him at the scene on the days in question. His only defense consisted of a denial of the drug buys, of never having seen the undercover agent Herritage, and having no specific recollection of events occurring on October 23 and 26, 1973. Defendant's guilt appears overwhelmingly established by the eyewitness testimony and chemical analysis, and his denials are totally unpersuasive. No significant question of fact was presented by any weakness in the People's case or by development by defendant of a plausible defense, notwithstanding the fact that the informant Pat Adams observed the buy on October 23. Defense counsel makes no attempt to establish how her testimony could help defendant's cause. The theory of agency or entrapment is not raised by defendant nor presented by any of the testimonial evidence (cf. *Roviaro v United States*, 353 US 53, *supra*).

In the instant case the informant not only was disclosed by the police but was known to defendant, as appears conclusively from defendant's own testimony. The defendant-appellant's position is that the People were required to produce

physically the informant and upon failure to do so the indictment against defendant should have been dismissed. The Court of Appeals in *Goggins* (34 NY2d 163, *supra)* does say that in an appropriate case production of the informant should be ordered. It would seem that in those cases in which the informant is under the custody and control of the State or its subdivision, it would be appropriate. Thus, if disclosure is required, then production would also be required in such an instance. A recent Federal case in the Ninth Circuit takes the position that the government assumes the responsibility for loss of an informer's testimony where it delays arresting the defendant so that the undercover informant can continue assisting the police in drug buys in the area and where as a consequence of such delay the informant is not available to be interviewed or called as a witness upon the defendant's subsequent trial. However, in such a circumstance where the informant is unavailable at the trial, it must be shown that defendant cannot obtain a fair trial in the absence of informant's availability *(United States v Norton,* 504 F2d 342). Defendant-appellant makes not the slightest showing of a necessity for the informant's testimony and that he cannot obtain a fair trial without it. *United States v Norton (supra)* places the burden upon the government to show that the informant did not possess exculpatory evidence. This burden was met here by the testimony of the supervising investigator in charge of the Narcotic Task Force that he provided funds to Pat Adams in order to enable her to leave the area because she was in fear of her life, presumably, from the drug sellers upon whom she informed. In any case, there has been no New York or United States Supreme Court case development of the instances where production would be appropriate, and the instant case is not one where a fair trial cannot be had without the testimony of the informant Patricia Adams.

Defendant assigns error to the cross-examination of him concerning a drug sale on December 5, 1973 where the prosecution asserted that he assaulted the arresting officers. It is hornbook law that a defendant or witness may not be questioned, on the issue of credibility, concerning prior arrests. However, the instant questioning did not concern the arrest per se but the drug sale and the assault on the police officers in attempting to effect an arrest for the drug sales. Placed in this context, the reference to the arrest was merely incidental to proper questioning on the assault and drug sales. Defend-

ant's use and sale of hard drugs may be used to show that he is not worthy of belief under traditional permissible attack upon his credibility *(People v Duffy,* 36 NY2d 258).

It was not improper to permit the use of a burglary charge reduced to petit larceny to impeach defendant on cross-examination. *People v Sandoval* (34 NY2d 371) does not change the substantive law in this respect even though it gives opportunity to limit such use by the vehicle of a pretrial motion.

The trial court denied defense counsel's request to charge the lesser included offense of criminal possession of a controlled substance in the seventh degree. Defendant cites *People v Malave* (21 NY2d 26) as supporting his proposition that possession should be charged where a sale of contraband is the issue, since a sale would normally comprehend possession and possession with intent to sell. However, the facts must comprehend a permissible inference of possession which does not also establish possession and sale. In the instant case such does not exist. Defendant denied knowing the undercover agent, denied making a sale to him and denied ever having possessed heroin in his life. No evidence existed from which an inference of possession alone could be drawn. Differently stated, the rule is that, if any view of the facts would support the existence of a lesser included offense, which would not also establish the greater offense, then the lesser included offense must be charged *(People v Mussenden,* 308 NY 558, 563): "The principle has, accordingly, evolved that the submission of a lesser degree of an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one. * * * The trial court may not, however, permit the jury to choose between the crime charged and some lesser offense where the evidence essential to support a verdict of guilt of the latter necessarily proves guilt of the greater crime as well." *People v Malave* did not change the law of *Mussenden,* nor carve out a special exception for sales of drugs to require possession in such a case to be always charged. Where possession is, under the facts of a particular case, a lesser included offense with respect to the charge of sale, then it still must be determined whether under a reasonable view of the evidence it is permissible to find possession without sale *(People v Stanfield,* 36 NY2d 467; *People v Cionek,* 35 NY2d 924; cf. *People v Hayes,* 43 AD2d 99, affd 35 NY2d 907). Under the facts of this case,

no reasonable hypothesis permits the inference of possession without sale *(People v Malave,* 21 NY2d 26, *supra).*

The questions asked by the District Attorney on cross-examination of defendant would not appear objectionable and the emphasis upon appellant's distinctive appearance was relevant upon the identification issue.

Lastly, defendant charges error by the prosecutor in commenting on the failure of defendant to call a fellow employee by the name of Putty. The prosecutor appeared to be trying to make the point that, according to defendant's testimony, Putty may have been the drug seller and not defendant and that he should have called Putty so that the jury could see whether there was any physical resemblance. The testimony of defendant did not attempt to establish that Putty might have been the drug seller. In fact, defendant had said that he had never seen drugs sold from the premises. It is, of course, normally not proper for a District Attorney to comment on defendant's failure to call witnesses, although the facts of a particular case may justify it *(People v Leonardo,* 199 NY 432). Even assuming that there was error in the District Attorney's comment *(People v Conklin,* 39 AD2d 160), the identity question was certainly established beyond a reasonable doubt in the People's favor and any error in regard thereto was harmless *(People v McAuliffe,* 36 NY2d 820; *People v Crimmins,* 36 NY2d 230; cf. *People v Harris,* 35 NY2d 665). There was not a significant probability that the jury would have acquitted defendant had the error not occurred.

The judgment of conviction should be affirmed.

MOULE, SIMONS, DEL VECCHIO and WITMER, JJ., concur.

Judgment unanimously affirmed.