THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES CARMACK, Also Known as PETER CARMICHAEL, Appellant.

Fourth Department, May 21, 1976

*Nathaniel A. Barrell (Joseph Mistrett* of counsel), for appellant.

*Edward C. Cosgrove (John DeFranks* of counsel), for respondent.

SIMONS, J. Defendant has been convicted of criminally selling a controlled substance (heroin), to an undercover agent of the Erie County Sheriff's Department. A new trial is required because the prosecutor improperly cross-examined defendant during the trial about his prior drug conviction and other drug-related incidents.

Prior to trial defendant moved for a *Sandoval* hearing *(People v Sandoval,* 34 NY2d 371). At the conclusion of that hearing the court ruled that if defendant testified, the District Attorney might question him about the underlying facts of (1) a 1971 charge of criminal possession of a hypodermic instrument which had been dismissed by City Court at the request of the District Attorney "without prejudice", (2) a 1971 charge of possession of a weapon and (3) a 1971 charge for attempted possession of dangerous drugs, fourth degree which resulted in conviction and a sentence of probation for five years with defendant receiving treatment. The hypodermic arrest and the attempted possession conviction apparently arose out of the same incident. It is this ruling and the cross-examination permitted by the court on these matters which defendant assigns as error.

When a defendant's prior bad acts are introduced into

evidence, two possible inferences arise, one permissible and one impermissible. The permissible inference is that one who has sinned in the past may have less respect for the truth than someone who has not. The impermissible inference is that one who has sinned before has sinned again and is guilty of the crime charged. Thus, the rule is stated that a defendant who chooses to testify may be cross-examined as to any immoral, vicious or criminal act which has a bearing upon his credibility as a witness, but he may not be questioned about such acts if the intent of the questions is to show from defendant's character or experience that he is predisposed to commit the crime for which he is on trial *(People v Schwartzman,* 24 NY2d 241, cert den 396 US 846; *People v McKinney,* 24 NY2d 180, 184; *People v Reingold,* 44 AD2d 191). If the "prejudicial effect of the impeachment testimony far outweighs the probative worth of the evidence on the issue of credibility," then the evidence should not be admitted *(People v Sandoval, supra,* p 376). Quite naturally, as the nature of the prior bad act and the crime charged become more similar, the inclination to consider the prior act as evidence of guilt becomes more irresistible.

In *Sandoval (supra,* p 378) the Court of Appeals attempted to set "some boundaries to the scope of cross-examination permitted in the past" and made two observations pertinent to the issue on this appeal. It stated that (pp 377-378): "crimes or conduct occasioned by addiction or uncontrollable habit, as with alcohol or drugs * * * may have a lesser probative value as to lack of in-court veracity" and "in the prosecution of drug charges, interrogation as to prior narcotics convictions * * * may present a special risk of impermissible prejudice because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders *(United States v. Puco,* 453 F. 2d, at p. 542, n. 9)." (See, also, *People v Yost,* 50 AD2d 577; cf *People v Duffy,* 36 NY2d 258 [in which questions about drug activities were permitted during a trial on non-drug related charges]). The danger pointed out by the court in the *Sandoval* decision is evident in this case.

Defendant was charged with a crime occurring during a one-on-one street sale. True enough, the encounter was observed by two back-up Deputy Sheriffs from a distance, but full evidence of the sale could be supplied only by defendant and the Sheriff's undercover agent, a witness who also possessed a criminal record including drug offenses. There was,

therefore, a compelling need for the jury to hear defendant's testimony. The court's ruling, however, created a serious risk of prejudice to him if he took the witness stand by permitting cross-examination of his prior drug activities, not only because of the similarity of the offenses, but because of the widespread acceptance of the notion that the drug users are habitual offenders and necessarily violate the law to supply their habits.[1]

Notwithstanding the court's ruling in the *Sandoval* hearing, defendant chose to testify and admitted on direct examination that he had been arrested for the weapon and drug possession charges in 1971 and that he had pleaded guilty to "intent to buy" drugs (attempted possession) and had been sentenced to five years' probation.[2] On cross-examination the prosecutor's questions about these incidents and his drug habits cover some 20 pages of the record and on recross-examination the prosecutor reopened the subject and again questioned at length. The prosecutor's questioning went far beyond the pale of proper impeachment and all but invited the jury to adopt the impermissible inference of guilt from this testimony by discussing in detail not only the long history of defendant's drug addiction, the cost of defendant's habit and the fact that at times the cost exceeded his earnings, but also by interrogating defendant about crimes similar in nature to the crime defendant was charged with (cf *People v Duffy,* 36 NY2d 258, *supra).* The obvious purpose of this and the reference to 17 hypodermic needles allegedly found at the scene of the crime for which defendant pleaded guilty (instruments of which defendant denied knowledge and which he was not charged with possessing) was not to reflect on defendant's credibility, but to suggest that crime, particularly trafficking in drugs, was a necessary practice of defendant to support his admitted habit.

---

1. That obvious prejudice did not prevent our affirmance of the sales conviction in *People v Law* (48 AD2d 228). That case is distinguishable, however, because the District Attorney's questions were precipitated by the defendant's statements on direct examination that he had never possessed or sold heroin at any time, in effect opening the door to the prosecutor's questions that he had assaulted an officer on a previous occasion when he was arrested for drug sales.

2. The dissent suggests that the defendant actually fared quite well inasmuch as the court permitted questioning on only three subjects and denied questions on nine. But the issue is whether the evidence permitted had a disproportionate prejudicial impact which outweighed its probative worth—not that defendant batted .750 at the hearing.

While the examination on the weapons charge was proper under accepted rules and evidence of prior drug activities may in some cases be harmless error, the questioning on the drug related incidents in this case could only have had a disproportionate impact upon the minds of the jurors. A new trial is required at which evidence of defendant's prior drug activity should be excluded (see *People v Yost,* 50 AD2d 577, *supra; People v Santiago,* 47 AD2d 476; cf *United States v Harding,* 525 F2d 84).

The judgment should be reversed and a new trial granted.

DILLON, J. (dissenting). I dissent and vote to affirm. At the *Sandoval* hearing *(People v Sandoval,* 34 NY2d 371), the defendant produced evidence of his past record and his involvement in varying degrees in twelve prior incidents. The burden was his to demonstrate "that the prejudicial effect of the admission of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion." *(People v Sandoval, supra,* p 378.) The trial court, in the exercise of its discretion, found that the defendant had met his burden with respect to nine of those events and prohibited the District Attorney from cross-examining thereon if the defendant testified. The court permitted questioning of the defendant on the three criminal charges which are the subject of this appeal. This court is unanimous in affirming the propriety of prosecutorial examination of the defendant on the 1971 charge of possession of a weapon.

It is well settled that a defendant who chooses to testify may be cross-examined concerning any immoral, vicious or criminal acts of his life which have a bearing on his credibility as a witness, provided the District Attorney acts in good faith and upon a reasonable basis in fact *(People v Duffy,* 36 NY2d 258, 262; *People v Kass,* 25 NY2d 123, 125; *People v Schwartzman,* 24 NY2d 241, 244, cert den 396 US 846). It is equally well established that cross-examination as to such acts will not be permitted when the obvious intent is to show from character or experience a propensity to commit the crime for which defendant is on trial *(People v Duffy, supra,* p 262; *People v Schwartzman, supra,* p 247).

In faulting the trial court for permitting examination on the 1971 arrest for criminal possession of a hypodermic instrument and the conviction for attempted possession of danger-

ous drugs, both of which arose out of the same incident, the majority relies heavily upon nonmandatory language in *Sandoval (supra)* which, in my view, was intended only to give guidance to the trial court in the exercise of its discretion. Speaking for a unanimous court, Judge JONES wrote (pp 375-376): "We do not suggest that precise guidelines can be laid down. A frame of reference may be described, however, within which the responsibility of *ad hoc* discretion should be exercised. Such frame of reference should be understood as illustrative and suggestive rather than categorical or mandatory."

Here the trial court, in ruling out nine prior bad acts, effectively recognized "that there may be undue prejudice to a defendant from unnecessary and immaterial development of previous misconduct." *(People v Sandoval, supra,* p 378.) Indeed, it was only to the extent of a need to recognize that principle that the court in *Sandoval* set "some boundaries to the scope of cross-examination permitted in the past". *(People v Sandoval, supra,* p 378.)

The guidance of *Sandoval (supra)* was meticulously followed by the court below. The defendant was afforded a pretrial hearing and was made aware of the testimony to be elicited on cross-examination. He did not become so apprehensive of its introduction that he was deterred from taking the stand. He testified and unequivocally denied the commission of the crime for which he was standing trial. Neither the jury nor the court was denied significant material evidence on the defendant's behalf.

The only question on this appeal, then, is whether the testimony elicited on cross-examination had such a disproportionate and improper impact upon the jury as to deprive the defendant of a fair trial.

The majority's assertion that the defendant was "charged with a crime occurring during a one-on-one street sale" is not fully accurate. In addition to the observations made by two backup Deputy Sheriffs, there was an informant (Calvin Feagins) present in the automobile with the Sheriff's undercover agent at the time of the sale. He testified at great length at a *Goggins* hearing *(People v Goggins,* 34 NY2d 163) and was thoroughly cross-examined by defendant's counsel. Defendant chose not to call Mr. Feagins as a trial witness after Mr. Feagins had testified that he had known the defendant for at least two or three years and pointedly identified the defendant as the individual who took money from the Sheriff's under-

cover agent and later returned with six glassine bags which proved to be heroin.

While the rationale of the majority opinion is largely based upon the extent and depth of the District Attorney's cross-examination, it concludes that the cross-examination regarding defendant's prior drug involvement should be totally excluded. The Court of Appeals has never established such a harsh and extreme rule and certainly *Sandoval (People v Sandoval,* 34 NY2d 371) does not stand for that result, except upon a finding that any reference to defendant's prior drug involvement will deprive him of a fair trial. Such is a discretionary finding, however, and no substantive rule of law limiting the permissible scope of cross-examination may be drawn from a Court of Appeal's affirmance of the exercise of discretion by an intermediate appellate court (see, e.g., *People v Branch,* 27 NY2d 834, affg 34 AD2d 541). I cannot conclude that the admission of these narcotics charges, flowing from a single event, will indicate an "obvious intent" on the part of the prosecutor "to show from character or experience a propensity to commit the crime for which defendant is on trial" *(People v Duffy,* 36 NY2d 258, 262, *supra).*

Two New York cases are cited for the proposition that "evidence of defendant's prior drug activity should be excluded". In *People v Yost* (50 AD2d 577), the Second Department reversed a felony conviction for driving while intoxicated on the ground that cross-examination of defendant's prior drunk driving record had no bearing on the defendant's credibility. That cannot be said of this defendant's prior drug involvement, which had a great bearing upon his in-court veracity (see *People v Duffy, supra).*

Additionally, *People v Santiago* (47 AD2d 476) stands only for the proposition that on retrial, the extent of the nature and manner of cross-examination on prior narcotics connections should be curbed. "To reiterate, it is not the mere fact that the cross-examination related to alleged crimes similar to that of which the defendant is charged which rendered the cross-examination improper. It is the specificity, the manner of the cross-examination, which admits of calculation to show in related fashion that the commission of the prior crime warrants concluding that the crime charged was committed, which constitutes impropriety on this record." *(People v Santiago, supra,* p 480.)

The majority's reliance upon *United States v Harding* (525

F2d 84) is equally questionable. The distinguishing features of *Harding (supra)* include, *inter alia,* the lack of good faith of the prosecutor in misdescribing the nature of the prior drug charge in his cross-examination. In addition to characterizing the earlier offense as somewhat more serious than it actually was, the court found the misdescription to be importantly prejudicial because it improperly implied that the prosecutor knew the witness was lying when, in fact, he knew that the witness was telling the truth. The court also found that during his summation the prosecutor improperly commented upon the prior drug charge.

Here the defendant makes no claim that the District Attorney impermissibly commented upon defendant's prior bad acts in the course of summation, nor is it contended that the court erred in its charge in assessing the purpose of such testimony and the weight it should be afforded. Indeed, the court's charge on the subject was in absolute conformity with the applicable law and nothing in this record suggests that the jury was incapable of applying the charge in its deliberations.

The prosecutor's cross-examination was particularly effective on the issue of credibility. There is no indication that he questioned the defendant in bad faith or without a reasonable basis in fact. His cross-examination developed that the defendant had engaged in widespread illegality regarding narcotics and revealed "a disposition or willingness on his part to place self-interest ahead of principle and society, proof that was relevant to suggest his readiness as a witness to do so again" *(People v Duffy, supra,* p 262; cf *People v Sandoval,* 34 NY2d 371, *supra).* The examination also revealed that the defendant had repeatedly lied to doctors at a narcotics treatment center about the extent of his drug habit in order that he might procure greater quantities of methadone to satisfy that habit. It cannot be questioned that such conduct "goes to the heart of honesty and integrity." *(People v Sandoval, supra,* p 377.) Such dishonesty and untrustworthiness has a very material relevance to credibility, whenever committed.

I share the view that "in the difficult and ineffable realm of discretion" *(People v Sorge,* 301 NY 198, 202), if we are to preserve and protect the duty of the Trial Judge to administer a trial effectively, we should not disturb his rulings in the absence of "plain abuse and injustice" *(La Beau v People,* 34 NY 223, 230; see *People v Duffy, supra,* p 263; *People v Sorge, supra,* p 202). Not only do I find a lack of discretionary abuse

in these proceedings before the Trial Judge, but I affirmatively find that he exercised his discretion with full recognition of the need to guarantee to the defendant a fair trial.

The conviction should be affirmed.

CARDAMONE, J. P., MAHONEY and WITMER, JJ., concur with SIMONS, J.; DILLON, J., dissents and votes to affirm the judgment in an opinion.

Judgment reversed on the law and facts and a new trial granted.