531 So.2d 627 (1988)
Kenneth Wayne ROWLAND
v.
STATE of Mississippi.
No. 57841.
Supreme Court of Mississippi.
September 14, 1988.
Jack R. Jones, III, Taylor, Jones, Alexander & Seale, Southaven, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the Court:
Kenneth Wayne Rowland (Rowland) has appealed from his conviction of forgery in the circuit court of Tate County for forgery of the seal of the Secretary of State, and sentence to fifteen years as a habitual offender under Miss. Code Ann. § 99-19-81.
Most of his assignments of error involve well-settled questions, or which are factually of no merit, and require no comment.
*628 We do address his contention that the State failed to make a jury issue on his guilt of forgery, his claim of prejudicial comment by the prosecuting attorney in the State's opening statement, and refusal to grant a lesser included offense instruction.
We find no error and affirm.

FACTS
On March 25, 1983, Sam Scarbrough (Scarbrough), a resident of Tate County, Mississippi, from 1975 to 1984, lost his job with the Firestone Tire and Rubber Company when the plant in Memphis was closed. He received from Firestone approximately $23,000 in severance pay.
He and his wife Judy planned to use a large portion of this money to purchase a fast food franchise from Taco Bell, a California corporation with a chain of restaurants specializing in Mexican/American cuisine. Scarbrough approached the defendant, a business man in Coldwater, Mississippi, for some business advice. Scarbrough had befriended him after Rowland joined the Coldwater Baptist Church in the early part of 1983.
Scarbrough and Rowland made an oral agreement to become partners in a business venture targeted at the purchasing of a Taco Bell franchise. They agreed that Rowland would be in charge of applying for and seeking the franchise. Rowland agreed to make the necessary contacts with the people at Taco Bell and, during a period of time, led the Scarbroughs to believe that he was actively engaged in doing so.
On August 31, 1982, Rowland gave Scarbrough a document purporting to be a Certificate of Incorporation of Scarland Restaurants,[1] Inc., issued that same day, under hand and Seal of Office, by Edwin Lloyd Pittman, Secretary of State. The defendant informed Scarbrough he had gone to Jackson that day and "... got us incorporated."[2]
Scarbrough, who relied upon the authenticity of the certificate of incorporation, gave Rowland a personal check in the amount of $17,500 for his part of the Taco Bell franchise.
In January, 1984, the Scarbroughs learned that Rowland had deposited the $17,500 in his personal account. All that Scarbrough received from Rowland out of the deal was a pen set engraved with the words "Taco King."
Scarbrough later telephoned Rowland and inquired about his money, who replied, "I don't deny taking your money ... you will get your money back."
Shortly thereafter Scarbrough had another telephone conversation with Rowland. The content of that conversation is found in the following colloquy:
Q. Don't tell us where he was. Tell us what he said about Taco Bell and your business?
A. Oh, okay. He said that he wanted me to do something, and I told him that I couldn't because I had found out what he had been doing on Taco Bell wasn't so. And I couldn't do what he wanted me to do. And then at first, he said, yes, it is. And I said, no, it is not. I told him how I checked how we had checked to find out. And he said, okay, but I have got your money. He said, I will give it back to you.
Q. Now, in specifics, Mr. Scarbrough, did Mr. Rowland at any time during the phone call tell you whether or not there was a business called Scar/Land registered with the Secretary of State of Mississippi?
A. No, sir, I told him after I told him about the papers up there wasn't true then I told him that we, also, called Jackson, Mississippi, and I found out that Scar/Land Restaurants *629 was not true, you know, and he said, I know that.

Q. Rowland admitted that?

A. Yes, sir.

Q. Did you, also tell him about the supposed franchise agreement with Taco Bell?
A. Yes, sir.
Q. What did he say about that?
A. At first he said it was. And then I told him how we called and found how it wasn't, then he said, I know it. And then he said, if you will just do something for me, he said, you know, you are going to get your money.
Q. Mr. Scarbrough, still talking about this phone conversation between you and Rowland that you received at the church that Wednesday night.
A. Yes, sir.
Q. In relation to Exhibit S-1 did he tell you that was genuine or that was false?

A. He said it was false.

Q. Now, relating to the supposed franchise agreement between Scar/Land and Taco Bell, did the defendant tell you that was genuine or that was false?
A. False, which I told him that wasn't true, and he said, it is, you know, it is not.

Q. Now, did he make any reference to the Seventeen Thousand Five Hundred Dollars ($17,500.00)?
A. He just said I would get it back.
Q. Now, subsequent to that phone call did you have any other contact with the defendant Rowland?
A. Yes, sir, a few nights later.
Q. A few nights later, where did you see him?
A. At my house.
Q. And what happened when he came to your house?
A. He just called first, wanted to know if he could come out to see us. And we said, yea. And he came out, and I asked him why that he did all that, and he said, I can't explain it but one of these days I will.
Q. You asked him why did what?
A. Why he took my money and the contract on the Taco Bell franchise wasn't true and the corporation wasn't true.
Q. Did he try to explain it to you?
A. No, sir.
Q. What did he say?
A. He just said, I will explain it to you one of these days.

(Vol. III, pp. 317-319) [Emphasis added]
In opening statement, the prosecutor said "the proof will further show ... that Rowland paid the sum of $800 to Sam Scarbrough in an effort to repay the $17,500 false pretense exchange, and to have Mr. Scarbrough not proceed with criminal prosecution." (R. 277) Defense counsel objected to the mention of two other crimes for which Rowland was not standing trial.
The jury returned a verdict of guilty, and Rowland, following the introduction of previous felony conviction records, was sentenced to fifteen years without parole as a habitual offender under Miss. Code Ann. § 99-19-81 (Supp. 1987).

LAW
Rowland was charged under Miss. Code Ann. § 97-21-47:
§ 97-21-47. Seal of state and other government and corporate seals or their impressions.
Every person who shall forge or counterfeit the great seal of this state, the seal of any public office or officer authorized by law, the seal of any court of record, the seal of any county, city, town or village, or the seal of any body-corporate, duly incorporated, or who shall falsely make, forge, or counterfeit any impression purporting to be the impression of any such seal, with intent to defraud, shall be guilty of forgery.
The indictment in pertinent part reads:
KENNETH WAYNE ROWLAND ... during August and September 1983 ... did unlawfully and wilfully feloniously, *630 falsely make, forge or counterfeit an impression purporting to be the impression of the Seal of the Secretary of State of Mississippi with the intent of the said KEN ROWLAND to defraud, cheat and embezzle Sam and/or Judy Scarbrough, in direct violation of § 7 97-21-47, Mississippi Code 1972 Annotated, as amended; ...
Rowland contends that the State failed to make a jury issue on forgery. In State v. Ellis, 161 Miss. 361, 137 So. 102, 103 (1931), involving forgery of a marriage license, this Court held:
The essential elements of forgery are thus tersely stated: "To constitute the crime of forgery proper, it is essential that three things should exist: (1) there must be a false making or other alternation of some instrument in writing; (2) there must be a fraudulent intent; and (3) the instrument must be apparently capable of effecting a fraud." See 26 C.J. § 4, page 897.
In Moore v. State, 107 Miss. 181, 65 So. 126, 127 (Miss. 1914), this Court said: "In order that forgery may be committed, the writing alleged to have been forged must be one which, if genuine, might injure another." Also, Dunson v. State, 223 Miss. 551, 78 So.2d 580 (1955); Laird v. State, 406 So.2d 35 (Miss. 1981).
Clearly the elements of forgery are present in this case. The instrument and seal affixed thereto were proved false, there was an intent to use it to defraud Scarbrough, and finally it was used to perpetrate the fraud on Scarbrough.
Rowland argues, however, that there was no proof that he was the one who forged the seal. Laird v. State, supra, answers this contention. It is well settled that either unexplained or unsatisfactorily explained possession of a forged instrument by the defendant is prima facie evidence that he either committed the forgery himself, or procured another to do so. Also, Green v. State, 152 Miss. 282, 119 So. 808 (1929). Rowland makes the argument that Laird involved a check, and this was an altogether different kind of instrument. This, of course, makes no difference whatever in the rationale behind the rule.

OPENING STATEMENT
Rowland contends reversible error was committed by the opening statement made by the prosecutor that Rowland paid $800 to Scarbrough in an effort to repay the $17,500 and induce Scarbrough not to have him prosecuted.
There is no dispute but that Rowland did in fact pay $800 to Scarbrough. Rowland argues that in making this statement the prosecutor was referring to the crime of uttering a forged document, and an attempt by Rowland to obstruct justice.
Of course, proof of payment of $800 was relevant evidence of Rowland's fraudulent intent in obtaining $17,500, as well as an effort to make amends to Scarbrough. Forgery is close kin to the crime of obtaining money under false pretense; it is the counterfeit instrument which enables the defendant to fraudulently obtain the money. The prosecution made no unfair characterization of the reason Rowland paid the $800. The jury had the right to infer, and the State had the right to argue that if Rowland had not fraudulently obtained money from Scarbrough, why was he paying him $800? Also, the jury was entitled to infer, and the State was entitled to argue, that the reason he paid Scarbrough $800 was to make amends and hopefully avoid prosecution. That was a fair inference from the evidence produced.

INSTRUCTION D-7
Rowland contends the court erred in refusing his requested Instruction D-7:
INSTRUCTION D-7
If you find from the evidence in this case beyond a reasonable doubt that Kenneth Wayne Rowland made to Sam Scarbrough a false representation of a past event or a present fact, either expressly or impliedly by means of color of false token or writing by exhibiting a copy of a corporate charter, when said corporation did not exist, and that the *631 Defendant made the false representation with knowledge of its falsity with intent to induce Sam Scarbrough to part with a sum of money in the amount of $17,500.00 and that the Defendant did obtain from Sam Scarbrough possession of said money and that Sam Scarbrough relied on the Defendant's representation as the moving cause by which the money was given and that Sam Scarbrough was injured by the false representation by loosing [sic] his money then you shall find the Defendant guilty of obtaining a thing of value, money, with the intent to defraud.
If the State has failed to prove one or more of the above elements beyond a reasonable doubt then you shall find the Defendant not guilty.
Rowland cites no authority to support this contention. He contends that he was entitled to the two-theory instruction embodied in D-6 which the court refused, and argued that since D-6 was disallowed, at the very least he was entitled to D-7. He was not entitled to D-6, which is appropriate only in wholly circumstantial evidence cases. See: Barnes v. State, 532 So.2d 1231 (Miss. 1988).
Although Rowland does not argue the point, we agree that there are cases in which an accused is entitled to an instruction upon a lesser included offense.
This is not such a case.
In numerous cases we have set forth the guidelines as to when a lesser included offense instruction is proper, indeed mandatory: Harper v. State, 478 So.2d 1017 (Miss. 1985); Lee v. State, 469 So.2d 1225 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984).
[A] lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge). [Emphasis added]
Harper v. State, 478 So.2d at 1021. Also, see Stevens v. State, 458 So.2d 726 (Miss. 1984); Lacy v. State, 432 So.2d 1205 (Miss. 1983); Colburn v. State, 431 So.2d 1111 (Miss. 1983); In re Jordan, 390 So.2d 584 (Miss. 1980).
This case focuses upon another delineation of when the lesser included offense instruction should not be given.
As above noted, the crimes of obtaining money by false pretense and of forgery are quite similar. While it would be quite possible to commit the crime of obtaining money by false pretenses without committing the crime of forgery, it is extremely unlikely that an accused could be guilty of forgery and at the same time not also be guilty of obtaining money by false pretenses. The fact that Rowland could be guilty of either, however, does not entitle him to be prosecuted only for the lesser offense, Cumbest v. State, 456 So.2d 209, 222-223 (Miss. 1984), and this case illustrates the point.
The State could very well have prosecuted Rowland for obtaining money by false pretenses. Essential to proof of such offense, however, was the bogus certificate of incorporation and counterfeit seal of the State of Mississippi, which Rowland effectively used in perpetrating the fraud upon Scarbrough.
Before Rowland would be entitled to a lesser included offense instruction, there would have to be some proof which showed him innocent of forgery, but at the same time guilty only of obtaining money by false pretenses. Harper v. State, supra. The evidence in this case does not support any such contention, because the very proof which made out a case of obtaining money under false pretenses likewise made out a case of forgery. Indeed, the requested instruction set forth that the money was obtained by using the bogus certificate. This requested instruction is no more than the contention that where an accused is guilty of two crimes, the State *632 can only prosecute and punish him for the one with the lesser penalty. We have repeatedly rejected this contention. Cumbest v. State, supra.
We cannot improve upon the language of the New York Supreme Court when it addressed this point:
The principle has, accordingly, evolved that the submission of a lesser degree of an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one... . The trial court may not, however, permit the jury to choose between the crime charged and some lesser offense where the evidence to support a verdict of guilt of the latter necessarily proves guilt of the greater crime as well. [Emphasis added]
People v. Mussenden, 308 N.Y. 558, 127 N.E.2d 551, 554 (1975), quoted with approval in People v. Law, 48 A.D.2d 228, 368 N.Y.S.2d 627, 635 (1975).
Finding no reversible error was committed in the trial of this case, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
NOTES
[1] The name of this corporation was derived from the names of its two incorporators, Sam Scar brough and Kenneth Rowland.
[2] Scarbrough testified that "... Mr. Rowland told me that he got us incorporated as Scar/Land Restaurants, Incorporated, where we could buy the Taco Bell for this incorporation."