532 So.2d 1231 (1988)
Harold BARNES
v.
STATE of Mississippi.
No. 57863.
Supreme Court of Mississippi.
August 17, 1988.
Rehearing Denied November 16, 1988.
*1232 Travis Buckley, Ellisville, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the Court:
Harold Barnes has appealed from his conviction of murder in the circuit court in the First Judicial District of Harrison County and sentence to life imprisonment; that court tried his case upon a change of venue from the circuit court of the Second Judicial District of Jones County.
This is Barnes's second appeal, we reversed his first conviction because of the State's violation of the discovery rule in Barnes v. State, 471 So.2d 1218 (Miss. 1985).
The issues we address on this appeal are admitting rebuttal testimony which arguably was properly a part of the State's case-in-chief, restriction of cross-examination, and refusing requested defense instructions.
Finding no error, we affirm.

*1233 TRIAL
Barnes, a pharmacist, was convicted of murdering his wife, Mrs. Beverly Barnes, a severe diabetic, by a massive overdose of insulin, and then faking an automobile accident as the cause.
He does not challenge the sufficiency of the evidence to support his conviction, and we resist the temptation to detail the facts of this unusual crime, revealing the paradoxial combination of ingenuity and gross stupidity (or simple-mindedness), so frequently found in a criminal head.
When Barnes testified he was asked on cross-examination:
Q. Do you know a many by the name of John Tracey?
A. I  I know of him.
Q. Did you or did you not owe John Tracey $30,000?
A. I do not and I did not.
The State first offered Tracey as a witness in rebuttal. Defense counsel objected:
Your Honor, before the jury is brought back, let me make this objection to this proffer of testimony of the witness Tracey. The testimony of this witness, to my understanding, it wouldn't be any different than it was before, and we object on the grounds that no proper predicate was lain and it is not proper rebuttal, and there has been no relevancy shown to the issues in this case.
I do have knowledge of the fact that it was previously ruled inadmissible under the records in this case, and I anticipate it to be substantially the same.
As a witness, Tracey was asked on direct examination:
Q. And have you ever engaged or had any business dealings with him in the past?
A. In the past, yes, sir.
Q. All right, and let me be a little more specific and ask you, as a result of those business dealings during the early months of 1980 and before April 7, 1980, whether or not the defendant, Harold Barnes, owed any money?
MR. BUCKLEY:
To which we object, Your Honor. There has not been a proper predicate lain for it and it is not proper rebuttal and it is not relevant to the issues in this case.
BY THE COURT:
Overruled.
A. Yes, sir, he did owe me some money.
Q. How much?
A. A little over $30,000.00.
Q. Were you ever paid?
A. No, sir.
Defense counsel then attempted to cross examine Tracey as follows:
Q. Have you ever sued Mr. Barnes for that money?
A. Did I ever sue him for the money?
Q. Yes, sued him for the money that you said he owed you?
A. No, sir, I didn't sue him.
Q. Why didn't you sue him?
A. Why didn't I sue him?
Q. Yes, sir.
A. Well, I 
Q.  it was because you knew you couldn't collect it, wasn't it?
MR. COLLINS:
We object to that, if the Court please. That's not relevant.
THE COURT:
Sustained.
MR. BUCKLEY:
Q. You knew you had no validly enforceable claim against Mr. Barnes, didn't you, is the reason you didn't sue him?
MR. WALTERS:
We object to that.
THE COURT:
Sustained.
MR. BUCKLEY:
Q. Mr. Tracey, was the reason you didn't sue Mr. Barnes is because you had nothing in writing from him that you could show where you  you could not document where you had ever delivered anything to him, and you had no documentation whatsoever where he had received anything from you? Is that the reason you didn't sue him?
*1234 MR. WALTERS:
We object to that, if the Court please.
THE COURT:
I sustain the objection.

LAW
Barnes's first two assignments of error complain of the inadmissibility of Tracey's testimony in rebuttal because no proper predicate had been made, and also sustaining the State's objection to defense counsel's cross-examination.
In the recent case of Hosford v. State, 525 So.2d 789, 792 (Miss. 1988), citing Roney v. State, 167 Miss. 827, 150 So. 774 (1933), we held that the State should not withhold evidence for rebuttal which properly belonged as a part of its case-in-chief. It is not always clear, however, whether evidence properly is part of the State's case-in-chief, or rebuttal. In gray areas, some discretion must be afforded the circuit court, especially when the defendant is offered an opportunity for surrebuttal. Breakfield v. State, 275 So.2d 860 (Miss. 1973). It was discretionary with the circuit judge in this case whether to allow this testimony in rebuttal.
Clearly a sufficient predicate was laid to offer Tracey as a witness. Barnes was asked if he knew him, and if he owed him. He denied owing Tracey any money. While the relevancy of Tracey's testimony was borderline, there was no abuse of discretion in admitting it. Mississippi Rules Evidence (MRE) 103; U.S. v. Medel, 592 F.2d 1305 (5th Cir.1979), rehearing den. 597 F.2d 772 (5th Cir.1979).
Nor can we say it was an abuse of discretion for the circuit judge to sustain the objections of the State to defense counsel's questions. Barnes's counsel was clearly entitled to ask Tracey the circumstances surrounding the indebtedness he claimed Barnes owed. Instead, he asked Tracey why he had not sued Barnes, to which an objection was sustained. Then he asked Tracy if the reason he had not sued was because he had nothing in writing upon which to base a suit, and again the court sustained the State's objection. Why Tracey had not sued Barnes may or may not have had anything to do with whether or not he owed him over $30,000. Also, whether or not there was some evidence of the debt in writing was hardly determinative of whether or not Barnes owed him the money. Again, while it may have been preferable for the trial court to have permitted Tracey to give his answers to these questions for whatever they were worth, we cannot say there was an abuse of discretion in sustaining the State's objection.
Defense counsel did not enlighten the court then or in his motion for a new trial specifically how he was in any way harmed by the circuit judge sustaining the State's objection. Nor indeed has he in his brief told us how the sustaining of these objections prejudiced his case. It is certainly true that under Rule 103(a)(2) MRE there is no technical requirement to make offer of proof when the court sustains objections on cross-examination. Rule 103(a)(2) MRE and comment; Harris v. Buxton T.V., Inc., 460 So.2d 828 (Miss. 1984). This does not remove, however, the requirement of Rule 103(a) itself that before error can be predicated at all upon an adverse evidentiary ruling it must appear that a "substantial right of the party is affected." In Harris v. Buxton, the plaintiff was not permitted to even call as an adverse witness, the one person who could answer all questions as to the wrongful acts of the defendant. It was tantamount to the circuit court denying a party the right to call the opposing party as an adverse witness. In such a case there is no need to make a profert of proof to satisfy both the technical requirement of Rule 103(a)(2), and also the actual impairment of a "substantial right" of the Rule itself.
If it was clear in this case that the circuit court's sustaining the State's objection to these questions harmed Barnes's defense, there would have been no necessity for him additionally to have made a profert of what he expected to prove. On the other hand, unless the record reveals a substantial right has been affected, no error can be predicated upon a trial court's evidentiary *1235 ruling. This Court is not going to surmise or conjure error.
Barnes has made no showing that he was prejudiced. What we stated in Denton v. State, 348 So.2d 1031, 1034 (Miss. 1977), still applies under our Rules of Evidence:
In order to preserve the question now attempted to be raised for consideration on appeal it was necessary to show that appellant was prejudiced. There was no effort to do so either in the course of the trial or on motion for a new trial.

INSTRUCTION D-7
No error was committed by the circuit court refusing Instruction D-7:
You are instructed that if there are any facts or circumstances in this case susceptible of two interpretations, one favorable and the other unfavorable to the accused, and then [sic] the jury has considered such facts and circumstances with all of the other evidence, there is a reasonable doubt as to the correct interpretation, then you must resolve such doubt in favor of the accused and palce [sic] upon such facts and/or circumstances the interpretation favorable to the defendant.
It is only in entirely circumstantial evidence cases that such an instruction is required. Boches v. State, 506 So.2d 254, 260 (Miss. 1987); Clark v. State, 503 So.2d 277, 278-279 (Miss. 1987); Keys v. State, 478 So.2d 266, 267 (Miss. 1985); Henderson v. State, 453 So.2d 708, 709-710 (Miss. 1984); Johnson v. State, 347 So.2d 358, 360 (Miss. 1977).

INSTRUCTIONS D-8 AND D-9
The circuit judge refused Instructions D-8 and D-9 requested by Barnes:
JURY INSTRUCTION D-8
The Court instructs the jury that if you believe from the evidence in this case that there is a probability of the innocence of the defendant, then there is a reasonable doubt as to his guilt, and in such a case the jury must render a verdict of "not guilty."
JURY INSTRUCTION D-9
The Court instructs the jury that every reasonable doubt, if any, in reference to any material matter connected with this case, which is submitted to any jury for decision, should be resolved by the jury in favor of the defendant and against the State of Mississippi.
Instructions C. 07, C. 12, S-2, D-5 all required that Barnes be proven guilty beyond a reasonable doubt before the jury would be authorized to convict. D-5 in fact instructed the jury that a reasonable doubt might arise from the whole of the evidence, a conflict of the evidence, or insufficiency of evidence, but however it arose, it was their duty to return a verdict of not guilty.
It is apparent that D-8 was simply an effort to enlarge upon the meaning of "reasonable doubt." Long ago, in Boutwell v. State, 165 Miss. 16, 143 So. 479, 483 (1932), we stated: "Reasonable doubt defines itself; it therefore needs no definition by the court." Also, Simpson v. State, 497 So.2d 424 (Miss. 1986); Pittman v. State, 350 So.2d 67 (Miss. 1977); Isaacks v. State, 337 So.2d 928, 930 (Miss. 1976); Simmons v. State, 206 Miss. 535, 40 So.2d 289 (1949).
Instruction D-9 was superfluous. The jury had been fully informed that before they could return a verdict of guilty they had to believe beyond a reasonable doubt that Barnes was guilty, and D-5, as noted, required the jury that if a reasonable doubt arose from any source, it was their duty to acquit.
INSTRUCTION D-15
You are instructed that even if you find that the testimony of Willard Knight is true as to the events that he related to have occurred on April 6th and 7th, 1980, but that the State has yet failed to prove beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that Harold Davis Barnes did kill and murder Beverly Dawn Barnes, then you must find the defendant not guilty.
*1236 Willard Knight (Knight) testified for the State that Harold Barnes had approached him two months before the death of Mrs. Barnes about staging an automobile accident. Knight did yard work for Barnes, and janitorial work at his store. Barnes filled Knight's drug prescriptions. They saw each other daily. Knight testified that Barnes said several weeks before the accident, "My wife will be in the car and I want to put her away." Knight picked out a bridge on Indian Spring Road that the car would run into. Barnes agreed. On the evening of Easter Sunday, Knight went by Barnes' house, Barnes came outside, and said, "We got to go tonight." That night Barnes went to Knight's house twice. Then Knight came to Barnes' house at 4:00 Monday morning, April 7. Knight saw Mrs. Barnes sitting and slumped over in her bathroom. Knight testified she had changed colors and was dead. He helped Barnes carry her body to the Camaro and situate her in the driver's seat. Barnes drove the Camaro from the passenger seat and followed Knight out to Indian Spring Road near the creek bridge. Knight attempted to keep the accelerator of the Camaro depressed by wire. That failed. Barnes then propped Mrs. Barnes' foot on the accelerator, put the car in gear, and let the car take off. The car left the road before it came to the bridge, turned off the side of the road into a field and hit nothing but a barbed-wire fence and post. Knight testified that Barnes exclaimed, "Damn, we'll be in jail in two hours." Knight left temporarily. Then he took Barnes to Barnes' house so that he could phone for help and then Knight returned Barnes to the scene of the staged accident. Knight was rewarded with drugs and small disbursements of cash and a promise to provide both for the rest of his life.
Knight was a Talwin addict. Talwin is a major analgesic  a synthetic opiate. Knight took 20 doses in one day. Barnes' attorney cross-examined Knight, attempting to show that Knight would change his story to please whoever controlled his access to drugs, that he did in fact change his testimony to contradict some prior statements, and that Knight was promised leniency if he would testify for the State. In treatment for his addiction Knight had been in Whitfield three times, East Mississippi State Hospital one time, and in a Louisiana hospital (DePaul's) one time for detoxification programs.
As can be seen from the facts, the requested instruction is incomplete. It omits the conversations between Barnes and Knight prior to April 6-7, 1980, concerning the planned homicide. The circuit judge properly refused it. Holmes v. State, 483 So.2d 684 (Miss. 1986); Duckworth v. State, 477 So.2d 935 (Miss. 1985); Presley v. State, 321 So.2d 309 (Miss. 1975); Rush v. State, 301 So.2d 297 (Miss. 1974).
Finding no error, we affirm.
AFFIRM.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.