The body of Rachael Morgan was found on the railroad tracks adjacent to the Neshoba County Gin on January 26, 1988. Ms. Morgan had been raped and strangled. Her body was found in a pool of thick, brown, syrupy substance that had come from the nearby mill. Her clothes were covered with the substance as well.
Billy Joe Seales testified that he closed his store a little after 11:00 P.M. on January 25, 1988, the night Ms. Morgan was murdered. While at the intersection of Davis and Carver on his way home, Seales saw Michael Parker walking south on Carver and Rachael Morgan walking west on Davis Street, but did not see them together and did not see them speak to each other.
Mark Davis saw Parker at The Hill on the morning of January 26. The topic of conversation among the people there was that a body had been found on the railroad tracks. At about 8:30 A.M. Parker asked Davis for a ride home from the wash house. Parker went inside his house, then returned and asked Davis to take him back to The Hill, to pick up a package of marijuana he had stashed in a ditch. When Davis and Parker arrived back at The Hill, Parker got out of the car to look for his package and Davis saw a police car and a city truck around the corner and told Parker *Page 1134 
to get back in the car. Davis then dropped Parker off at The Hill.
Richard Hill testified that he saw Parker at The Hill at about 10:00 a.m., on the morning of January 26, after he knew that a body had been found on the railroad tracks. In jest he asked Parker why he had killed that woman. Parker turned around and walked away.
Ethel Harris, who lived across the street from Parker, testified that she saw him at her house at about 10:45 P.M., on January 25. He stayed for ten or fifteen minutes and told her he was going to go see a woman and "get him some," and then left.
Jimmy Lee Shannon, owner/operator of a wash house in Philadelphia, testified that Michael Parker and another man were visiting down the road and wanted to get in when he opened up at 6:45 or 7:00 o'clock a.m. on the morning of January 26. Parker had some frozen clothes with him.
Doreen McAfee testified that she saw Parker and a man named Michael Harris walking along Northwest street at about twenty minutes to seven (6:40 a.m.) on the morning of January 26. This was not unusual as she had seen Parker walking there before in the four years her job had taken her on this daily route. People commonly followed the path Parker and Harris were taking that morning to get to a trail that led to County Market. McAfee waved to Parker and he waved back. She did not notice any brown syrupy substance on him that morning.
Don Huddleston testified that he was walking to work on the railroad tracks on the morning of January 26 and saw Parker walking up the street on the west side of the tracks at about 6:40 or 6:45 a.m. Parker called him over and they talked briefly, then Huddleston continued to walk the railroad tracks to work although Parker suggested that he walk on the road so that he might get a ride. Huddleston noticed no brown, syrupy substance on Parker's clothes.
Ms. Margie Clemons testified that she lived right near the Neshoba County Gin on the date of the murder and did not hear anything on the night of January 25. She had been at home from 7:30 p.m. on and did not go to bed until 12:30. Her daughter, Donna Clemons, testified that she saw Rachael Morgan walking by herself on Railroad Avenue near the Neshoba County Gin sometime between 11:00 and 11:30 P.M. when she was on her way home on the evening of January 25. She also saw "one of them twins" in the same area, although not with Ms. Morgan. She did not see Michael Parker that night.
Magdalene McCarty, a life-long friend of Ms. Morgan's, testified that she was with Ms. Morgan on the night of her death. They were at Ms. McCarty's home with Edward Campbell and Ms. Morgan left at about 10:00 p.m.
Outside the presence of the jury, Ms. McCarty testified that Ms. Morgan, while still in Ms. McCarty's home, frequently looked outside for "Mike." Ms. McCarty took this to mean Ms. Morgan's boyfriend, Michael McDougal. According to Ms. McCarty, Ms. Morgan said she was looking out for Mike because she was afraid he was going to beat her up for being with another man. In a statement given to police on January 6, 1989, Ms. McCarty said that Ms. Morgan was looking for Michael McDougal and that he was going to beat her up because she had been with another man.
Still outside the presence of the jury, Edward Campbell testified that he was watching a movie on television when Ms. Morgan was at Ms. McCarty's house on the night of the 25th. All he heard Ms. Morgan say about Mike or Michael was when she asked whether Mike had been by. He also said that he would not say he heard every word said by the two women because "womens are going to whisper. If men are in the house with them, they are going to whisper." None of this evidence was heard by the jury.
Juanita Parker, Michael Parker's sister, testified that he came home at about 11:45 p.m. on the night of January 25. He went to the kitchen and then to the bathroom, where he threw up. Juanita noticed no stains on his clothing when he came in, but *Page 1135 
testified that he threw up on them and their mother made him put them out on the line although they were not washed first. Juanita also stated that Michael did not leave the house again until the following morning. Juanita testified that Michael Parker got up the next morning at about 6:30 and went to wash his clothes.
Joe Andrews, a forensic scientist at the Mississippi Crime Lab, testified that he examined hair, shoes, and clothing in this case. He did not find any stains on the clothing of Michael Parker that could have been caused by the brown syrupy substance. However, had the clothes been washed, the substance might have been removed. The towel and washcloth recovered from Michael Parker's home likewise tested negative for the brown syrupy substance. Mr. Andrews was also asked to compare a red thread to the clothing of Michael Parker to see if it matched threads in the shirt he wore on the night of the murder. It did not. The red thread was recovered from the crime scene on the morning of January 27, after the police tape had been removed for seventeen or eighteen hours. Analysis of the tennis shoes worn by Parker on the night of the murder revealed none of the brown syrupy substance in which Ms. Morgan's body was found. Head hairs found in the baseball cap which was recovered from the crime scene did not match either Ms. Morgan's nor Mr. Parker's head hairs.
Bobby Anderson, an investigator for the Philadelphia Police Department, testified that he questioned Parker on January 26, 1988, at about 4:00 P.M. regarding Ms. Morgan's death. The police department "sent word to him" that they wanted him to come by and he voluntarily went to the police department. At that time, Parker had a bruise on his lip, a scratch on his nose, and two or three scratches on his hand and arm. Additionally, Parker had a couple of scratches on his back. Parker recounted his whereabouts on the night of the twenty-fifth as follows: he had been up on The Hill riding around with Antonio Herrington and Junior Burton, drinking gin. He got sick and threw up in Burton's car, so they took him home and dropped him off. He said he went back up to The Hill sometime before midnight and that Billy Joe Seales had seen him. He stated that he had not seen Rachael Morgan that night. The following day, upon further questioning, Parker changed his statement. He said Burton dropped him off at home that night where he got sick and he did not leave home again that night except to visit shortly with Ms. Harris. He still said he did not see Ms. Morgan that night. After questioning, Parker was arrested and held in custody.
Parker's house was searched twice in the same day by police officers, which is when the clothing he had worn the night of the murder was obtained. Also recovered were a towel and washcloth. The clothes recovered had already been washed.
A rape kit was taken from Michael Parker by Dr. Jerry Moore. Blood was taken from Parker again in June, 1988, also by Dr. Moore.
Dr. James Neill, who conducted the autopsy on Ms. Morgan's body, testified that there were various injuries to the body. Additionally, there were facial abrasions, the eyes were swollen and one eyelid revealed an abrasion. The external and internal injuries were believed to have been sustained at a time near her death. Various internal injuries were consistent with having been beaten with a fist or some other blunt trauma. A sexual assault kit was also taken from the body of Ms. Morgan. No fingernail scrapings were taken on Ms. Morgan. No exact time of death was fixed, but it was estimated to have been sometime between 11:05 P.M. and 9:00 A.M.
Deborah Haller, of the Mississippi Crime Lab, testified that she examined and tested the rape kits of Parker and Morgan. Parker was determined to be a non-secretor. The seminal fluid on the vaginal swab taken from Ms. Morgan's sexual assault kit was also indicative of a non-secretor. However, Ms. Haller said she could not eliminate the possibility that there was semen there from a secretor. She did say that it was her opinion that the last person *Page 1136 
to have sex with Ms. Morgan was a nonsecretor. Ms. Morgan was also determined to be a non-secretor. About twenty percent (20%) of the population is in the nonsecretor category. At the request of the defense, Michael McDougal was also tested. McDougal's blood was tested by Ms. Haller and he was determined to be a secretor. Enzyme testing was also done, revealing that Ms. Morgan was type PGM 2-1 as was McDougal. The semen from the vaginal swab from Ms. Morgan's body also contained PGM 2-1.
George Herrin, a molecular biologist for Cellmark Diagnostics, testified regarding various forensic evidence. He testified that tests performed by Cellmark under his technical supervision showed that the DNA obtained from the semen in the vaginal swab matched the DNA of Michael Parker. Mr. Herrin also testified that the semen of Michael McDougal was found on the vaginal swab taken from Ms. Morgan's body. In other words, the vaginal swab contained the DNA of both Michael Parker and Michael McDougal.
At the conclusion of the trial Michael Parker was found guilty of capital murder and on the recommendation of the jury was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections.
Parker filed a motion for JNOV or in the alternative for a new trial, which was overruled. Parker appeals to this Court assigning the following issues:
1. Whether the trial court committed reversible error by permitting the prosecutor to elicit testimony of a separate and distinct crime, depriving Appellant of due process under the federal and state constitutions and a fundamentally fair trial;
2. Whether the trial court erred by refusing to admit into evidence the hearsay testimony of Magdalene McCarty under the Mississippi Rules of Evidence, Rule 803(24) and 804(b)(5), depriving Appellant of due process and equal protection under the United States and Mississippi Constitutions;
3. Whether the verdict is against the overwhelming weight of the evidence;
4. Whether the trial court erred by refusing to grant properly submitted circumstantial evidence (two theory) instructions; and
5. Whether the Appellant was unduly prejudiced and denied a fundamentally fair trial by the court's failure to grant a continuance allowing Appellant to examine newly discovered exculpatory scientific evidence, violating the due process and equal protection clauses of the United States Constitution and the Mississippi Constitution.
 I. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PERMITTING THE PROSECUTOR TO ELICIT TESTIMONY OF A SEPARATE AND DISTINCT CRIME, DEPRIVING PARKER OF DUE PROCESS UNDER THE FEDERAL AND STATE CONSTITUTIONS AND A FUNDAMENTALLY FAIR TRIAL?
"The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Johnston v. State,567 So.2d 237, 238 (Miss. 1990), citing Hentz v. State,542 So.2d 914, 917 (Miss. 1989), Monk v. State, 532 So.2d 592, 599 (Miss. 1988). Unless the trial judge's discretion is so abused as to be prejudicial to the accused, this Court will not reverse his ruling. Shearer v. State, 423 So.2d 824, 826 (Miss. 1983), citing Page v. State, 295 So.2d 279 (Miss. 1974). The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston, 567 So.2d at 238.
 Pursuant to M.R.E. 404, this Court has repeatedly held that the admission of evidence of unrelated crimes is reversible error, most recently in Houston v. State, 531 So.2d 598, 605 (Miss. 1988).
Rose v. State, 556 So.2d 728, 731 (Miss. 1990).
Rule 404(b), M.R.E., precludes evidence of other crimes, wrongs, or acts to show *Page 1137 
that the defendant acted in conformity therewith. However, if evidence of other crimes, wrongs, or acts is offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it is admissible under M.R.E. 404(b). Lewis v. State, 573 So.2d 719, 722 (Miss. 1990); Robinson v. State, 497 So.2d 440, 442 (Miss. 1986). Even evidence not admissible because prejudicial under Rule 403 may be admissible under Rule 404(b). Jenkins v. State, 507 So.2d 89, 92 (Miss. 1987).
In Rose v. State, 556 So.2d 728 (Miss. 1990), Ms. Rose was appealing her conviction on two counts of grand larceny. At the trial she was questioned about arson and the fact that her home had burned was brought out, all over defense counsel's objection. This Court stated that the arson questions were not asked to develop evidence of larceny, with which Rose was charged. The trial court's failure to sustain the defendant's objection, allowing the suggestion of commission of another crime, was error. Rose, 556 So.2d at 731.
In this case, the prosecution elicited witness testimony that Parker had requested a lift to an area near where the body was found, purportedly to pick up a package of marijuana which he had previously hidden there. This was allowed over objection by defense counsel. The witness went on to say that Parker did not actually retrieve the package because when he (the testifying witness) saw the police officers, he told Parker to get back in the vehicle so they could get out of there. This incident in no way proves motive, opportunity, intent, preparation, plan, identity, or absence of mistake or accident. The State would have us believe that this incident proves knowledge on the part of Parker, but this argument holds no water. At the time this incident occurred the witness claimed it was already generally known that a body had been found at the railroad tracks. However, he also testified that he was the one who noticed the police cars, determined something was wrong, and hurried Parker so they could get out of the area.
There is no basis to the State's contention that Parker wanted to revisit the scene of the crime to determine whether it had been discovered. The trial court's failure to sustain Parker's objection, allowing the suggestion of commission of another crime, was error. The trial judge did not exercise his discretion within the boundaries of the Mississippi Rules of Evidence. But was his discretion abused so as to be prejudicial to Parker?
The State urges that if error, the admission of this evidence was only harmless error as the verdict of guilty would have been returned regardless. Parker, of course, claims the error was prejudicial, necessitating reversal and remand. If, as inHouston v. State, 531 So.2d 598 (Miss. 1988) (prior acts of child abuse admitted in case involving killing in the course of child abuse), the other crimes evidence admitted was of the same type as that with which the defendant was currently charged, the prejudicial effect would be great. However, the other crimes evidence admitted by the circuit court was attempted possession of marijuana; Parker was on trial for murder. The prejudicial effect, if any, would be minimal. Although the circuit court judge abused his discretion by overreaching the boundaries of the Mississippi Rules of Evidence, no prejudice resulted to Parker so as to necessitate a reversal on this issue.
 II. DID THE TRIAL COURT ERR BY REFUSING TO ADMIT INTO EVIDENCE THE HEARSAY TESTIMONY OF MAGDALENE McCARTY UNDER THE MISSISSIPPI RULES OF EVIDENCE, RULE 803(24) AND 804(b)(5), DEPRIVING PARKER OF DUE PROCESS AND EQUAL PROTECTION UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS?
The standard of review for this issue is the same as Assignment No. I: Admission of evidence is within the discretion of the trial judge. That discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will only be *Page 1138 
had when an abuse of discretion results in prejudice to the accused.
Rules 803(24) and 804(b)(5) are identical except that 803 applies regardless of the declarant's availability and 804 applies only when the declarant is unavailable. The declarant in this instance is the victim, who is unavailable as defined by M.R.E. 804(a)(4) — unable to testify because of death. Either rule could apply in this case and both have the same requirements, to-wit: equivalent circumstantial guarantees of trustworthiness as the other exceptions, and the court must determine that the statement is offered as evidence of a material fact, it is more probative on the point for which it is offered than is any other evidence available through reasonable efforts of the proponent, and the purposes of the rules of evidence and the interests of justice will best be served by admitting the statement into evidence. M.R.E. 803(24); M.R.E. 804(b)(5). Both rules also contain notice provisions, requiring the proponent to make it known to the adverse party sufficiently in advance of trial so that he may meet it. Particulars of the statement must also be disclosed. M.R.E. 803(24); M.R.E. 804(b)(5).
The statement at issue is indeed hearsay as it is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. M.R.E. 801(c). The defense wanted to offer testimony of Magdalene McCarty which would include statements made to her by the victim on the night of her murder. Ms. McCarty had previously given two written statements, one to the Philadelphia Police Department and one to the defense, which included the hearsay at issue. She would have testified that the victim expressed fear of physical abuse from "Mike" and that she (Ms. McCarty) understood Mike to mean Michael McDougal, the victim's boyfriend. The victim said, according to Ms. McCarty, that she was afraid Mike was going to beat her because she had been with another man.
There are five requirements for admission under M.R.E. 803(24), to wit: trustworthiness, materiality, probative value, interests of justice, and notice. Motorola Com. Electronics v.Wilkerson, 555 So.2d 713, 720 (Miss. 1989); Leatherwood v.State, 548 So.2d 389, 401 (Miss. 1989). These five findings should be made on the record unless there is an explicit waiver or waiver by silence or if the basis for the ruling is obvious.Leatherwood, 548 So.2d at 401. The trial judge has considerable discretion in determining whether to admit hearsay evidence under this exception and his decision will not be overturned except for an abuse of discretion. Id. Before evidence can be admitted under either residual exception to the hearsay rule, 803(24) or 804(b)(5), certain findings must be made by the trial judge.Cummins v. State, 515 So.2d 869, 873-75 (Miss. 1987). First, the court must make a finding that the statement is sufficiently reliable. Cummins, 515 So.2d at 874. The need for the evidence must be weighed against its trustworthiness, considering such factors as whether the statement is oral or written, the character of the statement, the relationship of the parties, the motivation of the declarant, and the circumstances under which the statement was made. Id. Next, the hearsay evidence must meet the requirements of M.R.E. 401 and 402 concerning materiality and if the declarant is alive, the court must also find that reasonable efforts were made to obtain his live testimony. Cummins, 515 So.2d at 874. Purposes of the Mississippi Rules of Evidence must be met by admission of the hearsay; this is determined by looking to Rule 102. Cummins,
515 So.2d at 875. Finally, notice must be given by the proponent of the evidence sufficiently in advance of trial to provide the opponent with a fair opportunity to meet it. Sufficient notice will depend on the facts and circumstances of the case.Cummins, 515 So.2d at 873-74. Once the five part test is met, we must address the confrontation clause problem. "The Sixth Amendment right of an accused to be confronted with the witnesses against him must be observed." Leatherwood, 548 So.2d at 402.
In this case, the trial judge made findings on the record that the statement was evidence of a material fact, was more probative *Page 1139 
than any other evidence that could have been offered by the proponent, and that the purposes of the Rules of Evidence would be served by admission of the hearsay statements. He impliedly but not specifically found that the hearsay statements had circumstantial guarantees of trustworthiness. Although the technical requirements of the Rule regarding notice were not met, the judge attempted to cure this by granting a continuance. (Additionally, the prosecution did have actual notice of the statement, albeit not as a result of the defense stating it planned to use the hearsay at trial.) However, after an overnight continuance, the judge stated on the record that on further consideration he did not think the hearsay evidence offered by the defense had the requisite guarantees of trustworthiness. The testimony of Ms. McCarty was not allowed in the presence of the jury.
Did the trial judge abuse his discretion? In determining whether the proffered hearsay has circumstantial guaranties of trustworthiness, need is a proper factor. Leatherwood, 548 So.2d at 401. The defense clearly needed this evidence as it was unavailable from any other source. Need, however, must be balanced against the trustworthiness of the evidence. Cummins,
515 So.2d at 874. Further following the guidelines set forth inCummins, there is no reason to doubt the victim's credibility when she made the statement at issue. The statement was made orally to her friend, Ms. McCarty. There would appear to be no manipulative motive on the part of the victim in making the statement and the circumstances under which it was made do not raise suspicion. There is no reason to doubt the trustworthiness of the statement. No motive was revealed to show that Ms. McCarty would have wanted to hurt either Michael Parker or Michael McDougal. That the victim said only that she was afraid of "Mike" does not bear on the trustworthiness of the statement. Which Mike she meant is a question of fact for the jury to decide. Balancing the extreme need of the defense for this evidence against its trustworthiness, the hearsay evidence at issue should have been admitted. Failure to do so was an abuse of the trial judge's discretion.
We must now address the confrontation clause problem. By admitting the hearsay statement of the victim, is the accused denied the right guaranteed him by the Sixth Amendment of both the United States and Mississippi Constitutions, i.e., to confront and cross-examine witnesses against him? Cummins, 515 So.2d at 875. In this instance the statement is favorable to Parker; it is the prosecution who is denied the right to cross-examine the unavailable declarant. Ms. McCarty, however, would be available for purposes of cross-examination. There being no counterpart to the confrontation clause for the benefit of the State, this presents no bar to the admission of the hearsay statements at issue.
There is another exception to the hearsay rule which would have permitted admission of the hearsay statements at issue, which was raised at trial but not included in the briefs submitted to this Court. M.R.E. 803(3) allows the admission of a statement that would otherwise be excluded as hearsay when it is a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition. That the victim told her friend, Ms. McCarty, that she was afraid Mike was going to beat her because she had been with another man was clearly a statement of her then existing state of mind or emotion. Whether analyzed under M.R.E. 803(24), 804(b)(5), or 803(3), the trial court abused its discretion by preventing the admission of the hearsay statements of the victim. Based on this issue, this case should be reversed and remanded.
 III. WHETHER THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Parker frames this issue as an overwhelming weight of the evidence question but his brief is directed at a failure of the prosecution to meet its burden of proof *Page 1140 
which should have produced a directed verdict.
On a question of overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Thornhillv. State, 561 So.2d 1025, 1030 (Miss. 1989), rehearing denied563 So.2d 609 (Miss. 1990). Only when the verdict of the jury is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will we disturb that verdict on appeal. Benson v. State,551 So.2d 188, 193 (Miss. 1989).
Summarizing the evidence that we must accept as true because it supports the verdict, we find that Parker was seen on the night Ms. Morgan was killed in the same area where she had been seen. The next morning Parker was in the vicinity of the crime scene. Forensic evidence showed that the semen found in Ms. Morgan's vagina was from a non-secreter; Parker is a non-secreter. The DNA banding pattern from Parker's blood matched one of the patterns found in Ms. Morgan's vaginal swab. The verdict is not contrary to the weight of the evidence so that to allow it to stand would sanction an unconscionable injustice.
When we consider a motion for a directed verdict, we must consider the evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. McGeev. State, 569 So.2d 1191, 1192 (Miss. 1990); Barnwell v.State, 567 So.2d 215, 217 (Miss. 1990); Davis v. State,530 So.2d 694, 703 (Miss. 1988). If there is sufficient evidence to support a guilty verdict, the motion for directed verdict must be overruled.
We have already summarized the evidence in this case and from it, it is clear that there is sufficient evidence to support a guilty verdict. The lower court did not err in declining to grant a directed verdict.
 IV. WHETHER THE TRIAL COURT ERRED BY REFUSING TO GRANT PROPERLY SUBMITTED CIRCUMSTANTIAL EVIDENCE (TWO THEORY) INSTRUCTIONS?
The accused is entitled to a circumstantial evidence instruction, upon request, when the evidence for the prosecution is wholly circumstantial. Keys v. State, 478 So.2d 266, 267 (Miss. 1985); Billiot v. State, 454 So.2d 445, 461 (Miss. 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1232, 84 L.Ed.2d 369 (1985).
The evidence in this case is wholly circumstantial, therefore there is a basis in the record for giving a circumstantial evidence instruction. The typical circumstantial evidence instruction was given in S-1 ("beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence"). Parker actually is complaining of the trial judge's failure to give the requested "two theory" instruction. The instruction requested by the defendant reads as follows:
 The Court instructs the jury that if there may be a fact or circumstance in this cause susceptible of two interpretations, one favorable and the other unfavorable to Michael Parker, when the jury has considered such fact or circumstance with all other evidence, there is a reasonable doubt as to the correct interpretation, then you, the jury, must resolve such doubt in favor of Michael Parker, and place upon such fact or circumstance the interpretation most favorable to Michael Parker.
The very same two-theory instruction was at issue in Hendersonv. State, 453 So.2d 708, 710 (Miss. 1984). This Court reversed and remanded for a new trial because the trial judge refused the two-theory instruction as well as the typical circumstantial evidence instruction. (". . . where the evidence is purely circumstantial, the trial court must grant a `two-theory' instruction . . ."). Id. See also Barnes v. State,532 So.2d 1231, 1235 (Miss. 1988), and *Page 1141 Johnson v. State, 347 So.2d 358 (Miss. 1977).
There is an evidentiary basis in this record for the two-theory instruction offered. There are several facts or circumstances in this case which are susceptible of two interpretations, one favorable to Parker and the other one not. Parker was seen near where the victim was seen on the night of her death: Parker lived near the crime scene; Parker went to the crime scene the morning after the murder; Parker wanted to pick up his stash of marijuana; Parker wanted to see if his crime had been discovered. Forensic evidence showed a non-secreter deposited the semen found in Ms. Morgan's vagina and Parker is a non-secreter: Parker raped and killed Ms. Morgan; some other non-secreter and Ms. Morgan had consensual sexual relations on the night of her death. Parker's DNA banding pattern matched a sample taken from Ms. Morgan's vaginal swab, but Michael McDougal's DNA banding pattern also matched a sample taken from Ms. Morgan's vaginal swab: Parker raped and murdered Ms. Morgan; Parker and Ms. Morgan had consensual sexual intercourse on the night of her death; Michael McDougal raped and murdered Ms. Morgan. Parker's clothes and shoes showed no sign of the sticky, syrupy substance in which Ms. Morgan's body was found: Parker succeeded in removing all traces of the substance from his clothes and shoes before being questioned by the police; Parker was not Ms. Morgan's murderer.
A properly instructed jury having heard all of the evidence in this case would have been faced with all of the choices listed above.
The evidence is purely circumstantial as there was no confession given by Michael Parker and no eyewitnesses.Williamson v. State, 512 So.2d 868, 880 (Miss. 1987), citingKeys v. State, 478 So.2d 266 (Miss. 1985). Even the evidence offered by the State did not directly link Parker to the murder of Ms. Morgan. "Rather, it required the jury to draw upon inferences and suspicious circumstances in order to return a conviction." Williamson, 512 So.2d at 880. The two-theory instruction was required in this entirely circumstantial evidence case. Barnes v. State, 532 So.2d 1231, 1235 (Miss. 1988). The jury was not fully and fairly instructed on this point by any of the instructions given, therefore Parker's conviction should be reversed and remanded for failure to give the two-theory instruction.
 V. WHETHER APPELLANT WAS UNDULY PREJUDICED AND DENIED A FUNDAMENTALLY FAIR TRIAL BY THE COURT'S FAILURE TO GRANT A CONTINUANCE ALLOWING APPELLANT TO EXAMINE NEWLY DISCOVERED EXCULPATORY SCIENTIFIC EVIDENCE, VIOLATING THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE UNITED STATES CONSTITUTION AND MISSISSIPPI CONSTITUTION?
The newly discovered evidence referred to in this issue is the DNA test results of Michael McDougal. Parker claims the trial judge failed to follow the guidelines set forth in Box v.State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring). Parker contends that the State withheld evidence that was available to it as early as July, 1988, regarding DNA patterns from two individuals found on the vaginal swab obtained from the victim. However, the McDougal test was not ordered until September 6, 1989, and the State did not get the results until October 12, 1989, and they informed the defense of the results on the same day.
Box simply does not apply to this case. The State did not withhold the DNA test results of Michael McDougal from the defendant because they did not exist. The newly discovered evidence was not prejudicial to the defense but was instead beneficial. The trial judge did not commit a Box error, and the matter is rendered moot by the order of remand for a new trial. There will be more than sufficient time for both the prosecution and the defense to take advantage of the scientific evidence. *Page 1142 
Because the trial judge excluded the testimony of Magdalene McCarty to the prejudice of Michael Parker, he abused his discretion under either M.R.E. 803(24), 804(b)(5), or 803(3), and this case must be reversed and remanded.
Because the trial judge refused to grant a two-theory instruction offered by the defense in this case, the trial judge abused his discretion and this case must be remanded.
Though no prejudice on this trial resulted from evidence of another crime being admitted, that admission by the trial judge was error and should not be repeated on the new trial.
Michael Parker's conviction of murder and sentence of life imprisonment in the Mississippi Department of Corrections is reversed and remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P. JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.