## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2002-KA-00607-SCT

*JEREMY DEAN MARTIN*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:                   2/27/2002
TRIAL JUDGE:                        HON. DALE HARKEY
COURT FROM WHICH APPEALED:          JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:             ROSS PARKER SIMONS
ATTORNEYS FOR APPELLEE:             OFFICE OF THE ATTORNEY GENERAL BY:
                                    W. GLENN WATTS
DISTRICT ATTORNEY:                  ROBERT KEITH MILLER
NATURE OF THE CASE:                 CRIMINAL - FELONY
DISPOSITION:                        AFFIRMED - 07/17/2003
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, P.J., CARLSON AND GRAVES, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Jeremy Dean Martin ("Martin") was convicted in the Jackson County Circuit Court for the murder of his father, Robert Bruce Martin. Martin was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. The trial court denied Martin's request for a new trial. Aggrieved, Martin appeals to this Court contending that the trial court erred in (1) refusing to suppress his confession, (2) admitting into evidence a crime scene photograph, (3) refusing to grant a mistrial when a witness testified about a prior bad act by Martin, and (4) refusing to instruct the jury on the definition of reasonable doubt. Finding no reversible error, we affirm the trial court.

## FACTS

¶2.     After years of conflict, a derogatory remark made by his father, Robert Bruce Martin, led the seventeen-year-old Martin, his pregnant girlfriend Crystal Lynn Broadus ("Broadus"), and actual gunman Richard Jackson Jacobs ("Jacobs"), to plan to kill Robert Martin on March 21, 2000. Martin called Broadus and asked her to bring a gun to his home. Martin brought the weapon into his home. He then gave the gun to Jacobs who killed Robert Martin. Jacobs then removed Robert Martin's wallet and fled the jurisdiction along with Martin, Broadus, and accessory-after-the-fact Donnie Ryals.

¶3.     Martin and Broadus were picked up in Texas while walking along a highway after their car had broken down. After he was detained and signed a statement saying he understood and waived his rights under *Miranda v. Arizona*, Martin gave a confession to Texas Ranger Tony Leal as to the events that led to the murder. Deputy Ken McClenic of the Jackson County Sheriff's Department retrieved Martin and took a videotaped statement from him after obtaining a signed waiver of his *Miranda* rights. Martin had been hospitalized for unspecified psychiatric problems several times and was taking Lithium, Welbutrin, Haldol and Ritalin. Martin claims these confessions were not voluntary due to his age and mental condition.

**DISCUSSION**

## I. CONFESSION.

¶4.     Martin avers that his youth and mental condition precluded him from effecting a knowing and voluntary waiver of his constitutional rights to counsel and to remain silent.  The prosecution has the burden of proving beyond a reasonable doubt that the confession was voluntary.  ***Morgan v. State***, 681 So. 2d 82, 86 (Miss. 1996).  This burden is met and a prima facie case established by the testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offers of reward.  ***Dancer v. State***, 721 So. 2d 583, 587 (Miss. 1998) (holding the confession of a thirteen-year-old voluntary).  Whether there was an intelligent, knowing and voluntary waiver is a factual question to be determined by a trial court from the totality of the circumstances.  ***McGowan v. State***, 706 So. 2d 231, 235 (Miss. 1997).  "This totality of the circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved.  We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights." ***Dancer***, 721 So. 2d at 587 (quoting ***Fare v. Michael C.,*** 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).  This Court has also held that the necessity of a knowing and intelligent waiver does not require sweeping inquiries into the state of mind of a criminal defendant who has confessed.  ***Butler v. State***, 608 So. 2d 314, 322 (Miss. 1992).  "[C]oercive police action is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." ***Id***.  This Court will only reverse a trial court's determination of voluntariness if convinced that such a finding is

manifestly wrong and/or against the overwhelming weight of the evidence. *Abram v. State*, 606 So. 2d 1015, 1031 (Miss. 1992).

¶5.     Viewing the circumstances surrounding the confessions in their totality, it is apparent there was a knowledgeable and intelligent waiver by Martin of his *Miranda* rights.  Prior to any interrogation, Martin blurted out circumstances surrounding his crimes.  The officer, Texas Ranger Tony Leal, informed Martin that they could speak about those matters after they reached the substation and Martin was given his *Miranda* rights.  When Martin reached the substation, a justice of the peace  ensured Martin was aware of his rights by reading him the rights guaranteed under *Miranda*.  The statement was signed by Martin, the magistrate, and Neal who witnessed the warning.  The officer did not observe any unusual or erratic behavior by Martin.  After the warnings were given, Martin indicated he wanted to talk to Neal, and Neal again read Martin his rights before taking his statement.  There was no indication of coercion or misconduct of any kind.

¶6.     The Jackson County Sheriff's Department was similarly circumspect in taking Martin's confession.  Martin's *Miranda* rights were read to him sentence by sentence by Deputy McClenic. After each sentence he was asked if he understood and, if so, to initial each sentence.  He was then asked to sign the bottom of the page.  Only then was Martin's confession videotaped.  There was no indication that Martin was behaving strangely before giving his confession or that the officers intentionally withheld medication.  There was an unsubstantiated allegation that Deputy McClenic may have supplied Martin with a pack of cigarettes.  Even if true, this would not qualify as coercion.  The confessions were knowingly and intelligently given and were free of any coercion or improper promises by the officers. This issue is without merit.

4

## II. CRIME SCENE PHOTOGRAPH.

¶7.    The prosecutor offered, and the court admitted into evidence, a gruesome photograph of the crime scene.  Martin argues that the prejudicial effect of this photograph outweighed its probative value, and the trial court committed reversible error in admitting it.  "The admissibility of photographs rests within the sound discretion of the trial judge."  *McGilberry v. State*, 741 So. 2d 894, 906 (Miss. 1999) (citing *Blue v. State*, 674 So. 2d 1184, 1210 (Miss. 1996)).  "Such discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and extenuation of probative value."  *Id*. (quoting *Williams v. State*, 544 So. 2d 782, 785 (Miss. 1987)).  In addition to weighing probative value versus prejudicial effect, the trial court must also consider "(1) whether the proof is absolute or in doubt as to the identity of the guilty party, and (2) whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury." *Id*. (quoting *Blue*, 674 So. 2d at 1210). "Further, photographs have evidentiary value when they: 1) aid in describing the circumstances of the killing and the corpus delicti; 2) where they describe the location of the body and the cause of death; 3) where they supplement or clarify witness testimony." *Id*. (quoting *Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995)).  Cumulative status does not eliminate photographs' evidentiary value.  *Tubbs v. State*, 402 So. 2d 830, 836 (Miss. 1981).

¶8.    There is no doubt the photograph was gruesome.  However, as the trial court pointed out, the photograph described the circumstances surrounding the homicide.  It corroborated the testimony of witnesses and showed the location and positioning of the body.  It accurately portrayed the scene witnessed and testified to by Deputy Sheriff Robert Lambeth.  The photograph also showed the nature

of the crime and the lack of any possibility of self-defense. It "depicts the criminal agency used to effect the death of the deceased" as the trial court stated. The photograph elaborated on the autopsy protocol and diagnoses report which was admitted into evidence by stipulation. The trial court's purpose in admitting the photograph was "to corroborate the testimony of [the] State's witnesses." The trial court refused to allow Martin to substitute a less graphic photograph that still showed the position and location of the body. Martin alleges this was error. In closing arguments, the prosecutor compared the photograph showing fatal injury suffered by Robert Martin with a family photograph; Martin alleges this constituted error.

¶9.     The trial court did not abuse its broad discretion in admitting the graphic photograph into evidence. The trial court is in the best situation to judge the value of evidence, and Judge Harkey's decision to admit the photograph was not an abuse of discretion. We find that the admittance of the photograph into evidence was not error but rather was within the sound discretion of the trial judge. *McGilberry*, 741 So. 2d at 906.

### III.   PRIOR BAD ACTS BY THE DEFENDANT.

¶10.     The jury, during re-direct of a prosecution witness, heard a statement about a prior bad act allegedly committed by Martin. "The decision whether to grant a mistrial lies in the sound discretion of the trial judge." *McGilberry*, 741 So. 2d at 912 (citing *Horne v. State,* 487 So. 2d 213, 214 (Miss. 1986)). If a curative instruction cannot remove the prejudicial effect of inadmissible issues placed before a jury, then a mistrial is required. *Id.* (citing *Reynolds v. State*, 585 So. 2d 753, 755 (Miss. 1991)). Considerable discretion is given to the trial judge in determining if a mistrial is warranted because the trial judge is "peculiarly situated to determine if a remark is truly prejudicial." *Id.* (quoting *Gossett v. State,*

6

660 So. 2d 1285, 1290-91 (Miss. 1995)). "Thus, the judge is vested with discretion to determine whether the comment is so prejudicial that a mistrial should be declared." *Alexander v. State*, 602 So. 2d 1180, 1182 (Miss. 1992) (citing *Edmond v. State,* 312 So. 2d 702, 705 (Miss. 1975)).

¶11.    The statement elicited from the State's witness was unresponsive to the question asked by the prosecution. There is no indication that there was any intent by the prosecution to introduce improper evidence to the jury. Responding to a line of defense questioning referring to the hospitalization and medication of Martin, the prosecutor asked, "Mr. Mitchell, when you did have occasion to see Jeremy Martin, did he walk around or talk crazy?" The witness responded:

> No. The only time I seen him act crazy was one day when a friend of mine was over there. And the friend of mine gave him a ride to the store. And they come back and Jeremy done stole a tape out of the boy's car. Which I don't know that he did, I didn't see him do this, but the boy said he did. And he was trying to say something to Jeremy about it. And Jeremy told him "I don't want to hear another word," like he was going to come kick the man's ass. And this man is forty-something years old. And I had to calm the man down, I said let him go, just let him keep it if he got it, don't worry about it. Because he would have hurt Jeremy. I mean, I never seen him do nothing other than that. That's the only time I ever heard him say anything. I thought he was wrong.

The trial court held the question was proper and found the prejudicial effect of the unresponsive statement did not warrant a mistrial. Where serious and irreparable damage has not occurred, the judge should cure the mistake by admonishing the jury to disregard the impropriety. *Id.* at 1182-83 (citing *Johnson v. State*, 477 So. 2d 196, 210 (Miss. 1985)). This is what occurred in the present case. The jury heard an improper statement, an objection to the statement was sustained, and the judge instructed the jury to disregard the statement since he did not believe irreparable damage had occurred. The refusal to grant a mistrial in these circumstances was well within the trial court's discretion and did not constitute error.

## IV. REASONABLE DOUBT INSTRUCTION.

¶12.    Martin alleges that an instruction defining reasonable doubt should be included in the instructions to the jury.  Jury instructions are to be taken as a whole.  *Nicholson ex rel. Gollott v. State*, 672 So. 2d 744, 752 (Miss. 1996).  In determining whether error exists in granting or refusing jury instructions, the instructions must be read as a whole; if the instructions fairly announce the law and create no injustice, no reversible error will be found.  *Collins v. State*, 691 So. 2d 918, 922 (Miss. 1997); *Johnson v. State*, 823 So. 2d 582, 584 (Miss. Ct. App. 2002).  This Court has long held that a definition of reasonable doubt is not a proper instruction for the jury; "[r]easonable doubt defines itself." *Barnes v. State*, 532 So. 2d 1231, 1235 (Miss. 1988) (quoting *Boutwell v. State*, 165 Miss. 16, 143 So. 479, 483 (1932)).

¶13.    In their entirety, the jury instructions in the present case correctly stated the law and applied that law to the facts.  The requested definition of reasonable doubt in the refused jury instruction, D-5, is as follows:

> A reasonable doubt is a doubt based upon reasonable and common sense, the kind that would make a reasonable person hesitate to act.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of her own affairs.

The trial court adequately instructed the jury about reasonable doubt in instruction S-6 by listing each of the elements of the offense and then stating: "If the state has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Capital Murder." The instructions taken as a whole correctly stated the law. Defining reasonable doubt for the jury is

improper. *Barnes*, 532 So. 2d at 1235. The trial court did not err in refusing Martin's proposed instruction defining reasonable doubt.

CONCLUSION

¶14. The trial court correctly found that Martin's confessions were voluntary. The court below did not abuse its discretion in admitting the photograph or in refusing to grant a mistrial. The trial court correctly followed Mississippi law in refusing to grant an instruction defining reasonable doubt. The judgment of the Jackson County Circuit Court is affirmed.

¶15. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED**.

**PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**