LEE, J.,
for the Court:
¶ 1. Donald McRoy was indicted by the grand jury of Jones County on November 26, 1996, on a charge of aggravated assault. McRoy was convicted of aggravated assault in the Circuit Court of Jones County on August 20, 1997. Pursuant to the *472 verdict of the jury, he was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections with eight years suspended, leaving twelve years to serve. He appeals his conviction and sentence to this Court.
A. FACTS
¶ 2. Early in the evening of December 12, 1995, Jeffrey Brown was sitting on the passenger side of an automobile belonging to Jim Young. Ray Martin was driving Young’s automobile when the two men pulled the vehicle into the driveway of Young’s home, which is located across the street from Ray Martin’s home. Young testified that the two men had borrowed his car to go and fill a spare tire with air. When they returned Young questioned Martin as to the whereabouts of Jeffrey Brown. Martin told Young that he had dropped Brown off. At that time Martin noticed an automobile parked in his yard across the street. He told Young that he was going to walk over and see who it was. Young testified further that as Martin started out of the driveway, a man stopped him and asked him where Brown was. Martin told the man that he had dropped Brown off. The man asked if he could look in the car. Martin replied that the car was not his and the man would have to ask the owner of the car, Mr. Young, who was standing on the porch. The man began to walk up the driveway calling Brown’s name. When Brown answered from the car, Young saw a pistol in the stranger’s hand. Young heard two shots and then saw the man run back to the automobile across the street and flee the scene. There were three or four people in the fleeing automobile and one of them was a female. Young testified that he did not know the man who shot Jeffrey Brown, but that the appellant favored him. Ray Martin was unable to testify due to a recent stroke.
¶ 3. Jeffrey Brown, the victim, testified that he noticed two people approaching the vehicle, and noticed that one of the people was the appellant, Donald McRoy a/k/a Eric Summon. Brown testified that he knew McRoy because he met him two years prior to the shooting and that for the eight or nine months preceding the shooting he saw McRoy three to five times a week.
¶ 4. According to Brown, McRoy walked over to the automobile in which he was sitting and said something to the effect of “you black ‘MF’ I am going to kill you.” McRoy was carrying a gun and after threatening Brown’s life, he shot him twice. Subsequent to the shooting, Brown was shown a photograph line-up at the direction of the Laurel Police Department. From the line-up, he identified McRoy as his assailant. At trial, Brown again identified McRoy as the man who shot him. Additionally, Officer Kevin Flynn, who arrived at the scene of the crime shortly after the shooting, testified that Brown told him that Eric Summon (a/k/a McRoy) had shot him.
¶ 5. Antonio Ross, Brown’s cousin, testified that he was with McRoy on the evening in question, as were Gary Hampton and Pam Ross. Ross maintained that although he and the aforementioned three were in Hattiesburg, Mississippi on the evening that Jeffrey Brown was shot, they were also in Laurel, Mississippi later that evening. Ross testified that he and the other three passengers were driving to Laurel to “get in contact” with Brown because they had no other way of contacting him. “Something” had happened to McRoy, and they were going to determine whether Brown knew anything about it.
¶ 6. Ross testified that he was not aware that McRoy wished to impose violence of any kind upon Brown. However, when they saw the car in which Brown was riding pull into Young’s driveway, McRoy walked across the street at which point Ross heard two gunshots fired. McRoy went back to the car, and they left the scene.
*473 ¶ 7. Donald McRoy testified that he was not in Laurel on the night of the shooting and therefore could not have been the assailant. He alleged that he was at a party in Hattiesburg, Mississippi celebrating his engagement to his wife. Ms. Mary Strickland, a family friend of McRoy, corroborated his alibi by testifying that she attended the Hattiesburg party from about 6:00 until around 10:30, and McRoy was present at the party the entire evening. MeRo/s wife, Michelle McRoy, also corroborated McRoy’s story that he had been in Hattiesburg at the party, and not in Laurel at the shooting.
¶ 8. Donald McRoy was indicted on November 26, 1996. On August 20, 1997, a jury of the Jones County Circuit Court found McRoy guilty of aggravated assault and sentenced him to serve a term of twenty years in the Mississippi Department of Corrections with eight years suspended, leaving twelve years to serve. He now appeals his conviction and sentence to this Court.
B. THE ISSUES
I. THE TRIAL COURT ERRED IN NOT SUSTAINING THE APPELLANT’S MOTION TO QUASH THE JURY PANEL AFTER THE EXTRANEOUS AND INCORRECT STATEMENT OF THE TRIAL JUDGE AS TO AN INDICTMENT FATALLY PREJUDICED THE APPELLANT’S DEFENSE.
II. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT’S PROFFERED JURY INSTRUCTIONS D-3 (CP-28), D-4 (CP-29), AND D-5 (CP-31), SAID INSTRUCTIONS BEING PROPER STATEMENTS OF THE LAW AND ESSENTIAL TO THE APPELLANT’S DEFENSE.
III. THE VERDICT (CP-41), OF THE JURY IN THIS CASE IS CONTRARY TO THE LAW OF THIS STATE, AND IS AGAINST THE OVERWHELMING WEIGHT OF
CREDIBLE EVIDENCE ADDUCED AT TRIAL.
C. ANALYSIS
I. DID THE TRIAL COURT ERR IN OVERRULING THE APPELLANT’S MOTION TO QUASH THE JURY PANEL?
¶ 9. McRoy claims that the trial court committed reversible error in not sustaining his motion to quash the jury panel. His motion was based on an exchange between the trial court judge and the jury panel during voir dire. The question which prompted the exchange was proffered by the State. The State’s attorney questioned the jury panel if they had any personal dealings with the criminal justice system that might influence them in their decision making. One juror expressed resentment toward the criminal justice system because there had been no indictment of the man who killed her brother. The trial court judge explained as follows:
THE COURT: There wasn’t an indictment in that case?
MS. PACIFIC: It was presented.
MS. CLARK: It was presented to the grand jury—
MS. PACIFIC: Yes, sir.
MS. CLARK: — as far as I’ve heard'—
MS. PACIFIC: Yes, sir.
MS. CLARK: — and they did not indict.
THE COURT: Okay. Do you understand then that all they could do was present it to the grand jury and the grand jury decided that there was not— you know, there are a lot of things that happen in our lives — and if it was presented to the grand jury and they did not — (breaking off)
Let me tell you what the function of the grand jury is. The function of the grand jury is to listen to what is being presented and they are required under law, and required also by statements that are made I am sure by Ms. Pacific, *474 that they don’t need to indict somebody that they don’t feel like can be convicted on the evidence.
Those things happened because if the grand jury says no — and, of course, whatever the grand jury does is done in secret and nobody knows anything about it. I am sorry you have that problem and I wish there was something that I could do — that’s what we are here for but—
The trial judge made an attempt to cure any error he may have made in the previous exchange by the stating the following:
THE COURT: In my efforts, Members of the jury, to try to sometimes make somebody feel better about what has happened, I may sometimes say too much. But the function of the grand jury, as I told you before, is to make a charge and that has nothing to do with what is here today in this case as far as this man is concerned. They only have so much evidence, and they are to consider the evidence to determine if there is a probable cause for a charge to be made. That’s all that is before you here today in this grand jury charge.
Now has anything that has been said by — what was the lady’s name?
MS. PACIFIC: Ms. Clark.
THE COURT: The lady here — was there anything said by her, or Ms. Pacific, or by me that would cause you to feel that too much has been said or that would influence you in any way in this cause today? Any of you? If you do, raise your hand, please.
(NO RESPONSE)
 ¶ 10. McRoy argues that due to this exchange, he was denied a fair trial. McRoy cites Clark v. State in support of his argument, in which the Mississippi Supreme Court stated that “remarks of trial judges made in the presence of a jury, which have a reasonable tendency to prejudice the minds of the jury against the defendant, are grounds for reversal.” Clark v. State, 209 Miss. 586, 594, 48 So.2d 127, 130 (1950). We are of the opinion that McRoy is incorrect in his position that an “indelible impression was created at the start of his trial, and lasted throughout that, if an individual is charged by a grand jury, that person must be guilty.” While we continue to hold the opinion that trial court should use the utmost caution in addressing the jury, including brevity and neutrality, we find that the trial judge in the case sub judice committed no reversible error, but simply correctly articulated the function of the Grand Jury. Beyersdoffer v. State, 520 So.2d 1364, 1366 (Miss.1988). See also Brown v. State, 690 So.2d 276, 297 (Miss.1996) (holding that “[a]ny ‘error’ in the prosecutor’s misstatement of the [gjrand [jjury’s function was cured when the judge, in effect, granted the objection and allowed the attorney to correctly articulate the grand jury’s function”).
¶ 11. We find that no prejudice was suffered by McRoy in the trial court judge’s statement of the function of the grand' jury, especially in light of his curative statements and the defense’s jury instruction D-l which stated in pertinent part: “You the jury must not allow yourselves to be biased against the Defendant merely because he has been charged with a crime or the fact that he is standing trial today.” In addition, the trial court judge inquired of the jury if the statements made would influence them in any way. There was no response from the jury, which indicates that there was no prejudicial influence. Therefore, the trial judge’s statement did not constitute reversible error. This issue is without merit.
II. DID THE TRIAL COURT ERR IN DENYING APPELLANT’S INSTRUCTIONS D-3, D-4, AND D-5?
¶ 12. In this second assignment of error, McRoy challenges the denial by the trial court of three of his proffered instructions. He claims that Instructions D-3 and D-5, which dealt with the concept of “reasonable doubt”, should have been given regardless of the fact that they were *475 covered by the Court’s Instruction C-l. Similarly, he argues that regardless of the fact that the subject of Jury Instruction D-4, the credibility of witnesses, was covered in the Court’s Instruction C-l, his instruction should have been admitted as well.
¶ 13. “In reviewing error in the granting or refusal of instructions, this Court looks at all instructions, and if the jury was fairly, fully and accurately instructed on the law governing the facts of the case, failure to give a requested instruction not ground for reversal.” Smith v. State, 572 So.2d 847, 849 (Miss.1990). Proposed Jury Instruction D-3 and proposed Jury Instruction D-5 read as follows:
JURY INSTRUCTION D-3
The Court instructs the Jury that a verdict of Not Guilty means that you are not satisfied that the State of Mississippi has proven the Defendant’s guilty beyond a reasonable doubt. You need not be convinced that the Defendant is innocent before you return a verdict of Not Guilty. To return a verdict of Not guilty, it is only necessary that you have a reasonable doubt as to the guilt of the Defendant.
JURY INSTRUCTION D-5
The law presumes a defendant to be innocent of the crime charged. Thus a defendant, although accused, begins the trial with a “clean slate” — with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant’s guilt after careful and impartial consideration of all of the evidence in the case.
It is not required that the State prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reasonable and common sense, the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs.
The jury will remember that a defendant is never to b convicted on mere suspicion or conjecture.
The burden is always upon the State to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
So, if the Jury, after careful and impartial consideration of all of the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit. If the Jury views the evidence in the case as reasonably permitting either of two conclusion — the Jury should of course adopt the conclusion of innocence.
¶ 14. The pertinent part of the corresponding instruction of the Court, Jury Instruction No. C.01, stated as follows:
The burden of proving the defendant guilty of every material element of the crime with which he is charged is upon the State of Mississippi. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.
[[Image here]]
The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the defendant guilty beyond a reasonable doubt. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless over *476 come by evidence which satisfies the jury of his guilt beyond a reasonable doubt.
¶ 15. The Court’s instruction clearly covers all that is covered in Jury Instruction D-3, and that instruction was therefore, properly refused. As to instruction D-5, we find that the Court’s Instruction covers most of what was covered in D-5, and that which was not covered in the Court’s instruction was unnecessary. The Mississippi Supreme Court has found that where a jury instruction is requested that appears to only “enlarge upon the meaning” of “reasonable doubt” the instruction may be properly refused because reasonable doubt is self-explanatory. Barnes v. State, 532 So.2d 1231, 1235 (Miss.1988). “Reasonable doubt defines itself; it therefore needs no definition by the court.” Id. (quoting Boutwell v. State, 165 Miss. 16, 143 So. 479, 483 (1932)). Therefore, proposed Jury Instruction D-5 was properly refused.
¶ 16. McRoy also asserts under this assignment of error, that Jury Instruction D-4 was improperly refused. Jury Instruction D-4 read as follows:
You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testified, or by the character of the testimony given, or by evidence to the contrary of the testimony given.
You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worth[y] of belief. Consider each witness’ intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness’s ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the. manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.
Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the Jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error in intentional falsehood.
After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.
¶ 17. The pertinent portion of the Court’s Jury Instruction C.01 stated as follows:
Each person testifying under oath is a witness. You have the duty to determine the believability of the witnesses. In performing this duty, you must consider each witness’ intelligence, the witness’ ability to observe and accurately remember, the witness’ sincerity, and the witness’ demeanor while testifying. Your must also consider the extent the witness is either supported or contradicted by other evidence; the relationship the witness may have with either side; and how the witness might be affected by'the verdict.
In weighting a discrepancy by a witness or between witnesses, you should consider whether it resulted from an innocent mistake or a deliberate falsehood, and whether it pertains to a matter of importance or an unimportant detail. *477 You may reject or accept all or part of a witness’ testimony and you may reject a part and accept other parts of a witness’ testimony.
After making your own judgement, you will give the testimony of each witness the credibility, if any, as you may think it deserves.
The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence of the fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.
¶ 18. Upon examination of the two instructions, we find that they are very similar in content. The Supreme Court of this state has held that the “refusal of a repetitive jury instruction is not error.” Jackson v. Daley, 739 So.2d 1031, 1037 (¶ 21) (Miss.1999) (citations omitted). In fact, the supreme court advises against “adding surplus and repetitive instructions.” Id. (citing Wall v. State, 413 So.2d 1014, 1015 (Miss.1982)).
¶ 19. We hold that Jury Instruction D-4 is a superfluous instruction, the giving of which at trial would have constituted redundancy on the part of the Court. We find, therefore, that this instruction was properly denied. This assignment of error is without merit.
III. WAS THE VERDICT OF THE JURY CONTRARY TO THE LAW OF THIS STATE AND AGAINST THE OVERWHELMING WEIGHT OF CREDIBLE EVIDENCE?
¶ 20. In his final assignment of error, McRoy asserts that the verdict was against the overwhelming weight of the evidence. He argues that because of the direct conflict in testimony concerning his whereabouts on the evening in question, the verdict is against the overwhelming weight of the evidence.
¶ 21. In reviewing the decision of the trial court, this Court views all of the evidence in the light most consistent with the jury verdict. Strong v. State, 600 So.2d 199, 204 (Miss.1992). A motion for a new trial should only be granted to prevent an unconscionable injustice. McClain v. State, 625 So.2d 774, 781 (Miss.1993). Accordingly, we will reverse and remand for a new trial only upon reaching the conclusion that the trial court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 22. Additionally, it is well settled that jurors are not only permitted, but are actually charged with the duty to resolve any conflicts in the testimony presented to them at trial.- Bridges v. State, 716 So.2d 614, 617(¶ 15) (Miss.1998) (citations omitted). “They may believe or disbelieve, accept or reject the utterances of any witness.” Id. “A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.” Id.
¶23. McRoy argues through his own testimony, as well as that of his wife, Michelle McRoy, and their friend, Mary Strickland, that he was at a party in Hat-tiesburg on the night in question, and therefore could not have assaulted Brown in Laurel. He asserts in his brief to this Court that the only witness who could place him in Laurel on the night in question was the victim, Jeffrey Brown.
¶ 24. Brown testified that McRoy was in Laurel, that he walked up to the car in which Brown was sitting, threatened him, and then shot him two times. Subsequent to the shooting, Officer Kevin Flynn, who arrived at the scene of the crime shortly after the shooting, testified that Brown told him at that time that Eric Summon, a/k/a Donald McRoy, had shot him. Additionally, Brown was shown a photograph line-up at the direction of the Laurel Police Department at which point he identified *478 McRoy as his assailant. At trial, Brown again identified McRoy as the man who shot him.
¶ 25. McRoy dismisses the testimony of Antonio Ross, who was with him on the night that Brown was shot. Ross testified that he rode with McRoy to Laurel in search of Brown. He testified further that when Martin and Brown pulled into Young’s driveway, he was across the street with McRoy. McRoy crossed the street to Young’s house, and Ross heard two gunshots. McRoy then returned to the car in which they were riding and they left the scene.
¶ 26. The jury was able to hear all of the testimony for and against McRoy. We find that the jury was entitled to conclude, after hearing all of the testimony, that the proof established that Donald McRoy a/k/a Eric Summon committed an aggravated assault against Jeffrey Brown. Therefore, this assignment of error is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH EIGHT YEARS SUSPENDED LEAVING TWELVE YEARS TO SERVE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, IRVING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.